**Patricia SCOGGIN, Plaintiff,**

v.

**Terry SCHRUNK, Mayor of the City of Portland, Oregon, et al., Defendants.**

**Civ. No. 71–524.**

United States District Court, D. Oregon.

Dec. 29, 1971.

Leo Levenson, Marvin S. Nepom, Kobin & Meyer, Portland, Or., for plaintiff.

Marion C. Rushing, Richard A. Braman, Portland, Or., for defendants Schrunk, Ivancie, Anderson, Goldschmidt, McCready and Calloway.

Robert W. Redding, Black, Kendall, Tremaine, Boothe & Higgins, Portland, Or., for State Construction Corp. and David Mazzocco, defendants.

OPINION

SOLOMON, District Judge:

Patricia Scoggin filed this action under the Civil Rights Act against the Mayor and members of the City Council of Portland, Oregon (City), and against

the State Construction Corporation (State Construction). She seeks to have the conveyance of her home from the City to State Construction set aside and State Construction enjoined from attempting to enforce the judgment in its favor for possession of the property and for its rental value from the time it received the deed. She also seeks to have the City ordinances and State statutes under which the sale was made declared unconstitutional, particularly as applied to her.

Specifically, Mrs. Scoggin alleges that by reason of her failure to pay $209.37, the balance due including interest on a bonded street assessment, the City transferred to State Construction her home, which she alleges is worth in excess of $15,000, and that State Construction is also demanding from her $2,325.-00 in rent for the period up to August, 1969, and additional rent thereafter.

In 1954, Mrs. Scoggin and her then husband purchased the house and lot described as the North 100 feet of the South 130 feet of the West 80 feet of Lot 34, Hollywood Addition to the City of Portland, Multnomah County, State of Oregon, located at 8705 Flavel Street, for $10,000.00. She has lived in the house almost continuously since 1954.

In 1959, the City constructed a sidewalk on this property at a cost to her of $418.67. Mrs. Scoggin and her then husband elected to pay the assessment in 20 semi-annual installments under the provisions of the Bancroft Bonding Act. All payments which became due through the year 1964 were paid in full.

In 1964, Mrs. Scoggin divorced her husband, and his interest in the property, then fully paid for, was transferred to her.

On December 23, 1964, the City Treasurer's office mailed a bonded lien statement for the semi-annual payment coming due on January 9, 1965. It was for $28. Mrs. Scoggin did not pay that installment.

On April 27, 1965, when the installment was less than four months delinquent, the City Treasurer mailed her a notice on the following form by regular mail:

FORM F-17-A

## NOTICE OF SALE

IF PAID BY:             YOU MAY DEDUCT COSTS!

You are hereby notified that I have received from the City Auditor a list of delinquent assessments against the following described property:

for the

Under the provisions of Section 5-341 of the Public works Code I will proceed to collect said assessment by advertisement and sale at 10 o'clock A. M._____at the 'east door of Multnomah County Court House.

**DARYL G. CALLOWAY, City Treasurer**

| Assessment .. $ | | |
|---|---|---|
| Interest . ..... $ | | |
| Costs . .... .. $ | | |
| TOTAL ..... $ | | |

| Docket No. | Page No. |
|---|---|

OFFICE OF CITY TREASURER     CITY HALL     PORTLAND, OREGON 97204

[A6076]

In addition, on four occasions between May 14, 1965, and June 4, 1965, the City Treasurer published a notice of sale of real property for delinquent bond assess-

ments in the *Daily Journal of Commerce*. The list included plaintiff's property, showing the amount of the lien to be $209.37. The *Daily Journal of Commerce* is a trade publication which publishes a great number of legal notices. The parties concede that the plaintiff did not see any of these notices.

On June 18, 1965, the City Treasurer, also by regular mail, sent Mrs. Scoggin a final notice of sale showing a sale date of June 25, 1965. The form of the notice read as follows:

FINAL NOTICE!  **PLEASE CALL AT**

# CITY TREASURER'S OFFICE
### ROOM 203 CITY HALL                    CA. 8-6141, LOCAL 305
**(PLEASE BRING THIS CARD)**

In Reference to_____

Lot_____ Block_____

Addition _____

Remarks _____

_____

_____

_____

Docket_____ Page_____

Collection Dept. by _____ J.T. Cereghino
                            Deputy-City Treas.

[A6077]

---

On June 25, 1965, the City Treasurer sold this property to State Construction for $229.44 and issued a certificate of sale to State Construction. On July 3, 1968, State Construction surrendered the certificate of sale to the City Treasurer and was issued a Treasurer's deed.

It is admitted that neither the City nor State Construction notified Mrs. Scoggin of the sale and that she had no notice of the sale from anyone until after July 3, 1968.

From the time of the sale until after the Treasurer's deed was issued, a period of more than three years, Mrs. Scoggin lived continuously on the property, paid real property taxes, and made im-provements, all without knowledge that the property had been sold to State Construction.

The notices of sale and the other procedures culminating in the issuance of a Treasurer's deed to State Construction followed the provisions of the Public Works Code of the City of Portland (Ordinance No. 76971).

Section 5-340 of the Code provides in substance that if an assessment is more than 30 days delinquent, the City Auditor shall prepare and transmit to the City Treasurer a list of each delinquent assessment, the name of the person to whom assessed, a description of the

property, and the amount of the assessment due.

Section 5-341 reads in pertinent part: "The treasurer shall thereupon proceed to collect the unpaid assessments named in such list by advertising and selling such lots or tracts in the manner now provided by law for the sale of real property on execution except as herein otherwise provided. Each piece or tract of land shall be sold, separately, and for a sum equal to but not exceeding the unpaid assessment thereon and the interest and cost of advertising and sale; . . . A sale of real property under the provisions of the charter conveys to the purchaser subject to redemption as herein provided, all estates, interests, liens or claims therein or thereto of any person or persons whomsoever, together with all rights and appurtenances thereunto belonging . . .."

thereunto belonging . . . ."

Works Code, such as the sections on redemption, issuance of a Treasurer's deed, and the effect of such deed, were modeled after ORS 223.510 to 223.595 (City Improvements and Works Generally—Methods of Enforcing Liens and Collecting Assessments).

ORS 223.510 reads as follows:

*"Authority to sell property for delinquent liens and assessments.* In addition to the method provided by law, ordinance or the charter of any incorporated city for the sale of real property for delinquent liens or assessments, every incorporated city may cause the real property to be sold as provided in ORS 223.510 to 223.590 for any assessment, lien or installment thereof at any time after one year from the date such lien, assessment or installment becomes due and payable, if bonded; otherwise, at any time after 60 days from the time it is entered in the docket."

Under this section, the City adopted its own procedure, which contains many provisions which are identical to those in the State act. There are, however, significant differences. The State act (ORS 223.510 and ORS 223.515) deals with the collection of not only liens and assessments, but also installments due on bonded liens. The City ordinance (Section 5-341) refers to assessments only.

Under the State act, before an installment on a bonded lien may be listed by the Auditor for transmittal to the Treasurer, it must be delinquent for at least one year; and if it was not bonded, it must be delinquent for at least 60 days. Under the ordinance, there is no provision for delinquent bonded installments, and assessments must be only 30 days delinquent before they may be listed by the Auditor for transmittal to the Treasurer.

The period of redemption under the State act is one year, but under the ordinance, three years.

Both the State Act (ORS 223.520) and the City ordinance (Section 5-341) provide for the advertising and selling of lots "in the manner now provided by law for the sale of real property on execution . . . ."

The notice provisions for the sale of real property on execution are contained in ORS 23.450:

"Before the sale of property on execution, notice thereof shall be given as follows:

.    .    .    .    .    .

"(2) In case of real property, by publishing a similar notice [i. e., written or printed notice of the time and place of sale], particularly describing the property, once a week for four successive weeks, making four publishings in all, with the last publication at least one week prior to the day of sale, in a newspaper of the county,

. . . and by sending forthwith upon the making of the first of such publishings, a copy of such notice by registered mail to the judgment debtor at his last known post office address or place of residence."

Neither the State statutes nor the City ordinances provide for notice to the

owner after the sale and prior to the expiration of the period of redemption.

On August 13, 1969, defendant Mazzocco, agent for State Construction, filed an action in Multnomah County Circuit Court to obtain possession of the property and to recover $2,325.00, the amount Mazzocco alleged was the reasonable rental value of the property up to the date of the filing of the complaint.

Mrs. Scoggin then brought a suit in equity, also in the Multnomah County Circuit Court, against State Construction to set aside the deed, alleging both lack of notice of the foreclosure proceedings and unjust enrichment.

The State trial judge tried the equity suit first. He found that Mrs. Scoggin would not have knowingly permitted her $10,000 house to be lost for a $229.44 lien and that State Construction was under a duty to inform Mrs. Scoggin of the facts and its failure to do it was "fraud".

The Supreme Court of Oregon reversed. The Court erroneously assumed that the City followed the provisions of ORS 223.510 to ORS 223.595 when it gave Mrs. Scoggin notice of her delinquencies and when it sold her property to State Construction.

On that assumption, the majority held that there could be no unjust enrichment because fraud, a necessary ground under ORS 223.575(3), was not pleaded, and because Mrs. Scoggin's lawyer, in his oral argument before the Supreme Court, stated that he was not relying on fraud. The majority concluded that, under those circumstances, State Construction would be prejudiced if fraud were considered and that an "appellate court sitting as a court of equity is not free to disregard clear statutory requirements regardless of the apparent injustice of the result."

The majority opinion recognized that the City had failed to give notice by registered mail as required by the statute, but held that adequacy of notice was not in issue under the statute, because ORS 223.575 "provides in essence that the deed is prima facie evidence that all notices required by statute . . . have been given"; that State Construction "did not attempt to put in any evidence of what notice the City had given Mrs. Scoggins"; and that "Mrs. Scoggins did not claim at trial or in this court that the failure to give notice deprived her of her property without due process of law." State Construction v. Scoggins, 92 Or.Adv.Sh. 1155, 1157, 485 P.2d 391 (1971).

In other words, the majority concluded that Mrs. Scoggin could not obtain any relief from the courts because her lawyer had proceeded on an erroneous theory and without adequate pleadings.

Two members of the Court filed vigorous dissents. They believed that there were adequate grounds to uphold the trial court's decision ordering the property returned to Mrs. Scoggin. One dissenting judge questioned "the constitutionality of a statutory procedure under which a homeowner can be deprived of his home without proof of actual notice of the proceedings under which his home was sold for failure to pay a delinquent assessment." He suggested that the issue was of such importance that even though not raised by plaintiff's counsel, the case should have been set down for reargument on that issue. *Id.*, at 1174, 485 P.2d at 400 (Tongue, J., dissenting).

As a result of this decision, the news media gave wide publicity to the inequities in the ordinances of the City of Portland and the laws of the State of Oregon relating to the foreclosure of delinquent assessments and liens and the manner in which such ordinances and laws were construed and carried out by the City Treasurer. The Portland City Council, responding to widespread criticism, halted all sales under its ordinances and have adopted certain procedures to provide more notice to an owner who may not understand the peril to his property if he fails to promptly pay his delinquent assessment.

The City Council also proposed and the voters adopted an amendment to the

City Charter by which the City would be able to purchase at private sale, and without public auction, land against which the City liens are being foreclosed when the market value for tax purposes of the land exceeds by 25 per cent the amount of the City liens plus any tax liens against the property. The amendment also imposed upon the City the duty to "notify by registered mail or its equivalent the owner of the land prior to the sale, if known, that the property had been sold and the name of the purchaser thereof."

These new procedures adopted by the Portland City Council and the Charter Amendment are not retroactive.

In order for Mrs. Scoggin to prevail here, she must prove that she has the right to maintain this action and that she has been deprived of her federally protected right to due process of law.

State Construction and the City have filed a number of defenses in which they assert that this Court may not consider Mrs. Scoggin's case on the merits.

Defendants first contend that Mrs. Scoggin's claim for relief is time barred.

This contention was considered and denied by another member of this Court. I am satisfied that it was properly rejected.

Defendants next contend that this Court lacks jurisdiction over the subject matter because 42 U.S.C. § 1983 actions are limited to claims involving civil rights and not property rights.

The jurisdiction of the courts under the Civil Rights Acts has been expanded. These acts were originally passed to secure to freed slaves their rights as citizens under the Constitution and laws of the United States. At first, claims were limited to cases involving purposeful racial discrimination. Later, jurisdiction was extended to civil rights not involving racial discrimination, such as freedom from illegal search and seizure, interference with the right to counsel, intimidation of prisoners, and police brutality. See Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), and Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964).

While it is true that some cases did make a distinction between civil rights and property rights—see Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)—the courts have recently been dissatisfied with this distinction. See Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947), and Joe Louis Milk Company v. Hershey, 243 F.Supp. 351 (N.D.Ill. 1965).

It is unnecessary for me to decide whether a pure property right may be asserted under the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

■ Here, in her complaint and more clearly in her briefs, Mrs. Scoggin complains that the City under color of state law has deprived her of procedural due process because of inadequate notice. Her legal claim is that her constitutional civil rights were violated and this in turn led to the loss of a property right, namely her home.

In Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), cert. denied 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91, plaintiffs, tenants in a public housing project, filed an action under the Civil Rights Act. They alleged that because of inadequate notice to them, the Authority's termination and penalty charge provisions deprived them of their due process rights. They also sought a money judgment for rents improperly exacted.

There, as here, the defendants contended that the court had no jurisdiction because the tenants were claiming "at most a deprivation of property which was not contemplated by the Civil Rights Act." The court rejected the contention of the Housing Authority and stated at Page 864:

"Unlike the cases cited which involved property rights (and incidental civil rights), the instant actions allege deprivations of procedural due process, a civil right, which may ultimately lead to the loss of a property right, to-wit,

tenancy in public housing projects. The present challenges are quite similar to the challenges to the procedures for admission into public housing, which we held we had jurisdiction to consider in Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968), and to the challenges to the procedures for terminating welfare benefits considered by the Supreme Court, Goldberg v. Kelly [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)]; Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (March 23, 1970)."

■ Defendants next contend that Mrs. Scoggin is barred from maintaining the action because of *res judicata*. Specifically, they assert that the subject matter of this action was either fully litigated in the State Court action or that it was expressly waived by Mrs. Scoggin's lawyer in the hearing before the Supreme Court of Oregon.

"[U]nder the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." Lawlor v. National Screen Service, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955).

The City of Portland was neither a necessary nor an actual party in the State Court suit brought against State Construction on the theory of unjust enrichment. The liability here of the City is not dependent on the culpability of State Construction in the State suit.

Neither is Mrs. Scoggin's § 1983 action the same action that was litigated in the State Courts.

She sued in the State Court for unjust enrichment. Her proof was the difference between the value of the house and the amount State Construction paid for the lien. Mrs. Scoggin's § 1983 suit contends that the notices mailed her were constitutionally inadequate. As Justice Denecke pointed out in the Oregon Supreme Court decision, "Mrs. Scoggins did not claim at trial or in this

court that the failure to give notice deprived her of her property without due process of law", and "Construction Corp. did not attempt to put in any evidence of what notice the City had given Mrs. Scoggins." *Scoggins, supra*, 92 Or.Adv. Sh. at 1157, 485 P.2d at 392.

Even though the same circumstances and transactions give rise to both cases, entirely different facts are essential to maintaining each one. Here there is more than "one right of the plaintiff and one wrong by the defendant involving that right . . ." Bankers Trust Co. v. Pacific Employers Insurance Co., 282 F.2d 106 (9th Cir. 1960), cert. denied, 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed. 2d 27 (1961).

The doctrine of *res judicata* is not applicable.

■ Defendant's final contention raises the principal issue in this case. Defendants say that even if the City did not comply with the notice provisions of the law and even if by reason of such failure the sale was without jurisdiction under State law, plaintiff has not stated a claim for the deprivation of a federally protected constitutional right.

I disagree.

When one considers the totality of the circumstances under which Mrs. Scoggin's home, worth in excess of $10,000, is advertised for sale and sold for $229.-44, without complying with the state law on notice, because six months earlier she failed to pay an installment of less than $30.00 on a bonded street assessment lien, her claim to recover her house rises to the dignity of a federally protected constitutional right.

I believe that the forms of the notices mailed to Mrs. Scoggin on April 27, 1965, and on June 18, 1965, were both constitutionally inadequate to inform her of the danger that she might lose her home if she failed to pay $209.37, the full amount due on the bonded sidewalk lien.

I also believe that sending these notices by regular mail were equally inadequate. The Treasurer's office either

had or could easily obtain information on the value of the property and whether it was occupied by the owner who had homestead rights and where the owner could be reached. There is a correlation between the notice a taxpayer is entitled to receive and the extent of the loss he might suffer by lack of adequate notice, and there is also a correlation between taxpayer interest in avoiding loss and city interest in promptly collecting assessments.

Here, the Treasurer knew that the City could not lose any money even if the collection of the $209 lien was delayed.

He also knew that if this property, worth in excess of $10,000 were sold, it would be sold to a private investor for not to exceed $230. If the property was not redeemed because of lack of notice or any other reason, the owner would lose his home and the investor would earn $10,000 or more, without any possibility of loss since if the property were redeemed, he would get the full amount he paid plus interest and penalties.

In spite of the knowledge or ready access to this knowledge, the Treasurer mailed the notices by regular mail prior to sale and did not attempt to notify the property owner of the sale or her right to redeem even by an unregistered letter after the property had been sold for $229.44.

I find that the ordinances and laws involved here, as written and as applied to Mrs. Scoggin, offer so many opportunities for fraud and favoritism and are so deficient in providing adequate notice to the owners of the property of the risks of non-payment, that they deprived Mrs. Scoggin of her federally protected right to procedural due process.

This opinion shall serve as Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

Plaintiff is entitled to a judgment directing that:

1. The Treasurer's deed from the City of Portland to State Construction Corporation dated June 25, 1968, recorded in the records of Multnomah County at Book 648, page 475, relating to real property described as the South 100 feet of the West 80 feet of Lot 34—HOLLYWOOD, be set aside;

2. State Construction and Mazzocco execute and deliver to plaintiff a good and sufficient deed transferring all of their interest to plaintiff and satisfying any liens or encumbrances which they may have placed thereon, for the following described real property:

The North 100 feet of the South 130 feet of the West 80 feet of Lot 34, HOLLYWOOD, in the City of Portland, County of Multnomah and State of Oregon;

3. State Construction and Mazzocco be enjoined from levying execution or attempting to enforce any judgment in State Construction v. Scoggin, Multnomah County Circuit Court, No. 350–705, or Scoggin v. State Construction, Multnomah County Circuit Court No. 350–834, for possession of the property described in paragraphs numbered 1 and 2 of this order, which is also known as 8705 Flavel Street, Portland, Oregon, or for damages by reason of plaintiff's occupancy of this property;

4. Plaintiff shall pay to the City of Portland the sum of $229.44, together with interest thereon at the rate of six per cent per annum from June 25, 1965, and upon such payment the Treasurer of the City of Portland shall satisfy the lien in full; and

5. Plaintiff shall recover her costs and disbursements in this action.