**Willie T. COLEMAN and Brittannia Wood, Appellants,**

**v.**

**Theodore J. SCHEVE et al., Appellees.**

**No. 9921.**

District of Columbia Court of Appeals.

Argued May 13, 1976.

Decided Dec. 8, 1976.

Rehearing and Rehearing en Banc Denied Mar. 8, 1977.

**136**

Quentin W. Banks, Washington, D. C., for appellants.

Kurt Berlin, Washington, D. C., for appellees Scheve. Dennis M. McHugh, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee Walter E. Washington.

Before KERN, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

This is an appeal from the trial court's order refusing to set aside a tax deed issued by appellee, the Mayor-Commissioner, to appellees Theodore and Geraldine Scheve. The property at issue had been owned by appellants (a mother and her daughter) since 1951, and was their family residence. The property was sold to satisfy delinquent real estate taxes. Appellants

failed to redeem the property within the allowable two-year time period, and thereby forfeited ownership. They contend that the notification procedure followed by the District of Columbia concerning the tax sale and the expiration of the redemption period did not conform to the principles of due process, even though they concede that statutory requirements were satisfied. While we recognize appellants' hardship, we reject their arguments as being contrary to established law in this jurisdiction and unsupported by decisions of the Supreme Court.

For many years prior to 1971, real property on which District of Columbia taxes were in arrears was sold in January. Thus, a property owner would have until the month of January, two years after the property had been sold for nonpayment of taxes, within which to redeem it. D.C. Code 1973, § 47–1003. Over the years, appellants' frequent tax delinquency had resulted in the sale of their property on 11 prior occasions. In each of those instances, appellants redeemed their property by paying the taxes due just as the two-year redemption period was about to expire.

In May of 1971, pursuant to D.C.Code 1973, § 47–1001, the District of Columbia City Council changed the date for the sale of real property on which fiscal year 1971 taxes were in arrears to October 26, 1971. As a result of this change, appellants' property was sold in October of 1971. When Mrs. Coleman, as had been her practice, attempted to redeem the property in January of 1974, the Assessment Services Division informed her that the time within which she legally could have done so had expired in October of 1973.

 The procedure followed by the District tax officials in giving notice of pending tax sales was outlined at trial by a representative of the assessor's office. According to his undisputed testimony, appellants were sent a tax assessment in September 1970 which set forth the real property taxes owed for 1971 and warned of the consequences for nonpayment thereof. A similar notification was sent in February or March of 1971. In May or June of 1971, a third notice, reflecting the fact that the taxes were delinquent, was sent to appellants. In September 1971, the District mailed appellants a "tax sale notice", advising them that if their taxes remained in arrears, their property would be sold in October 1971. Finally, the District's records indicate that a "courtesy" letter (not required by statute) was sent to Mrs. Coleman informing her of the October 1973 expiration date of the two-year redemption period.[1]

---

1. Mrs. Coleman claimed never to have received the letter advising her of the expiring redemption period, and the trial court found her testimony credible. The tax official's testimony at trial was that the letter had been sent by regular mail, because the assessor's office had experienced difficulty with the use of registered mail. According to the witness, registered letters often are unclaimed. In determining whether the District's procedures were "reasonably calculated" to give proper notice to appellants, the fact that the letter was not received by Mrs. Coleman is only one factor to be considered, and is not dispositive of the case. See Dodson v. Scheve, D.C.App., 339 A.2d 39, 40 (1975), cert. denied, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976). Service by mail is reasonably calculated to give notice in most circumstances. See Schroeder v.

City of New York, 371 U.S. 208, 214, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950). [For the exceptional cases, see Robinson v. Hanrahan, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); Covey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L. Ed. 1021 (1956).] Assuming the accuracy of Mrs. Coleman's testimony, the District government should not be charged with the Postal Service's failure to deliver the letter. Cf. Nelson v. City of New York, 352 U.S. 103, 108, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956). The government has sent such "courtesy" letters to taxpayers in other cases. Dodson v. Scheve, supra, 339 A.2d at 40; Moore v. District of Columbia, D.C.App., 332 A.2d 749, 751 n. 5 (1975). The record indicates that this is a regular practice.

Appellants do not contend that they were unaware that their property taxes were owing. Mrs. Coleman acknowledged having received notice that their 1971 taxes were delinquent, both through the mail and in person at the time she visited the Office of the Assessor to pay their 1970 real estate taxes. Appellants also knew that the continuance of such delinquency would result in the sale of their property. As noted, appellants' failure to meet their tax obligations on time had resulted in the sale of their home on 11 previous occasions. Mrs. Coleman testified that she was familiar with the newspaper advertisement of tax sales, and had seen such publications often in the past, but that she did not see the notices for 1971.

■■ It is undisputed that the District of Columbia properly advertised the October 1971 tax sale by newspaper publication in compliance with the statutory requirements of D.C.Code 1973, § 47–1001, requirements which we construe stringently in order to protect the constitutional rights of property owners.[2] *Potomac Building Corp. v. Karkenny,* D.C.App., 364 A.2d 809, 812 (1976). Appellants seem to argue that notice by publication, even though accompanied by notice through the mail, is per se deficient to permit divesting an individual of property consistent with due process of law. However, the question of whether the demands of due process have been satisfied in a given case cannot be answered by the mere recitation of concern as to the adequacy of notice by publication. While reasonable notice is, of course, constitutionally required, what constitutes such notice must be determined by the nature of the proceedings and all other attendant circumstances. *See Walker v. City of Hutchinson,* 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.

Ed.2d 178 (1956); *Dodson v. Scheve,* D. C.App., 339 A.2d 39, 40 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976).

■ The existence of procedures for the assessment of taxes, for the collection of taxes, and for the imposition of penalties for nonpayment of taxes is a matter of common knowledge. Such procedures are particularly familiar to property owners, who are responsible for meeting annual— and often more frequent—tax obligations. In light of these facts, courts have found that taxation proceedings may be accompanied by less stringent notification provisions than may be required for other proceedings affecting property interests. *See, e. g., City of Auburn v. Mandarelli,* 320 A.2d 22, 29 (Me.), *appeal dismissed for want of a substantial fed. question,* 419 U. S. 810, 95 S.Ct. 25, 42 L.Ed.2d 37 (1974); *Botens v. Aronauer,* 32 N.Y.2d 243, 248–49, 344 N.Y.S.2d 892, 895, 298 N.E.2d 73, 74– 75, *appeal dismissed for want of a substantial fed. question,* 414 U.S. 1059, 94 S.Ct. 562, 38 L.Ed.2d 464 (1973).[3] *Cf. Dodson v. Scheve, supra,* 339 A.2d at 40 n.3. In this case, in addition to the notice provided in accordance with the tax statutes and by widespread public familiarity with the consequences of tax delinquency, the District of Columbia utilized a notice procedure which was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ Appellants had actual knowledge of (1) the tax debt, (2) the manner in which tax sales are announced, (3) the fact that a sale had occurred, and (4) the existence

2. The requirements were revised after this case arose. *See* D.C.Code 1975 Supp., § 47–1001.

3. A *Supreme Court* decision dismissing an appeal for want of a substantial federal question is an adjudication on the merits and binds lower courts. *Hicks v. Miranda,* 422

U.S. 332, 343–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Cullinane v. Geisha House, Inc.,* D.C.App., 354 A.2d 515, *cert. denied,* —— U.S. ——, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). *See McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976).

of the two-year redemption period. These circumstances readily distinguish this case from those in which the Supreme Court has found a deprivation of due process. Our dissenting colleague cites inapposite cases which dealt with indirect notice to individuals who had little or no reason to expect that their property interests were being affected and who did not, therefore, have adequate opportunity to protect themselves from forfeiture. The same hardly may be said in the case of appellants, in view of their extensive experience with tax sales and redemptions. The two-year redemption period following the sale provided appellants with ample opportunity to protect their property interests, particularly in light of Mrs. Coleman's personal visits to the assessor's office before the redemption period had expired.

The only factor in this case which differentiates it from other cases in which we consistently have rejected a due process challenge to the tax sale notice procedure is the change in the date of the sale and appellants' erroneous reliance on a redemption period which had been legislatively modified. This factor was not present in *Dodson v. Scheve, supra,* and *Moore v. District of Columbia,* D.C.App., 332 A.2d 749 (1975). However, this circumstance does not rise to the level of a due process deprivation, particularly in light of the District's efforts to acquaint appellants with the expiring redemption period. *Cf. Nelson v. City of New York,* 352 U.S. 103, 109–09, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956). Appellants can claim no vested right to a specific sale date, nor even to a constant length of the redemption period. As Justice (later Chief Justice) Stone wrote for a unanimous Supreme Court:

Such [land taxation and condemnation] statutes are universally in force and are general in their application, facts of which the land owner must take account in providing for the management of his property and safeguarding his interest in it. Owners of real estate may so order their affairs that they may be informed of tax or condemnation proceedings of which there is published notice, and the law may be framed in recognition of that fact. In consequence, it has been uniformly held that statutes providing for taxation or condemnation of land may adopt a procedure summary in character, and that notice of such proceedings may be indirect, provided only that the period of notice of the initiation of proceedings and the method of giving it are reasonably adapted to the nature of the proceedings and their subject matter and afford to the property owner reasonable opportunity at some stage of the proceedings to protect his property from an arbitrary or unjust appropriation. [*North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925). *Cf. Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at 316, 70 S.Ct. 652.]

The procedures employed by the District were reasonably calculated to notify appellants of the actions taken against their property, and afforded them adequate opportunity to protect their interests. The notices which were provided satisfied constitutional requirements. While we reiterate our suggestion that the tax laws might well be remodeled to better apprise possibly unwitting owners of the harsh consequences of delinquency, *see Moore v. District of Columbia, supra,* 332 A.2d at 751–52, that is a task for the legislature.[4] The severe penalty of a loss of property for nonpayment of taxes which may be but a fraction of the property's val-

---

4. Chapter 9 of Title 47 contains special provisions for owner-occupied family dwellings. This chapter authorizes quarterly tax payments, D.C.Code 1973, § 47–901, and, in proper circumstances, provides for special notice prior to a tax sale. *Id.* § 47–903. However, these sections are inapplicable unless a taxpayer has filed an affidavit of domicile and ownership. *Id.* § 47–905. Appellants concededly have not filed such a document. The dissent urges that it is the District's obligation to advise all taxpayers of

ue does not constitute a denial of due process. *See Nelson v. City of New York, supra,* 352 U.S. at 109–11, 77 S.Ct. 195. While we share our dissenting colleague's sensitivity to the personal loss which resulted to appellants because of their course of conduct, we are not free to redress the situation when we could do so only by declaring a perfectly valid procedure to be unconstitutional.[5]

*Affirmed.*

MACK, Associate Judge (dissenting):

Two elderly District of Columbia women have been deprived of the home that they have struggled, financially, for twenty-three years to maintain. The loss of their domicile—representing a personal investment of over $20,000—has come approximately one year after the mortgage was paid in full, and as a result of a sale for delinquent taxes netting the District of Columbia $294.09. These two "delinquent taxpayers" did not receive any personal notice of the pendency of the sale which took place three months earlier than the date which, for forty years, had been the customary date for tax sales. Their loss is one which the majority dismisses as not

"ris[ing] to the level of a due process deprivation." I respectfully disagree.

One would find it hard to believe, from the majority's recitation, that appellants have never received actual notice of the sale of their home or the expiration date for redemption.[1] The fact is that the only notice given appellants of the actual date fixed for the sale was by newspaper publication. Such notice was concededly in compliance with Section 47–1001 of the D.C.Code. It does not follow that such notice, under the circumstances presented here, comports with due process.

In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court considered the constitutional sufficiency of notice by publication prior to depriving known persons, whose whereabouts are also known, of substantial property rights, and found such notice incompatible with the requirements of due process. "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S.

---

the provisions of Chapter 9 and provide them with the affidavit if they are eligible. Such an argument reads into an otherwise unambiguous statute a requirement which Congress easily could have stated affirmatively had it intended to impose such an obligation. Further, the dissent seems to suggest that its interpretation of §§ 47–903 and 47–905 is necessary to save the statute from due process attack. In our view, the more natural reading of these legislative provisions is simply that those homeowners who wish to bring themselves within Chapter 9 must comply with the filing requirement of § 47–905.

5. The facts of this case—in which the statutory notice requirements were met and appellants had actual notice of everything except the legislatively altered tax sale date—make it an inappropriate vehicle for addressing the more difficult due process issue which would be presented if a completely uninformed or incompetent individual were subjected to a tax sale proceeding which ultimately resulted in the loss of property, *see Covey v. Town of*

*Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L. Ed. 1021 (1956), or if the government knew the property owner was not at the place to which notice has been sent. *See Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972).

1. The lack of actual notice has been the basis of appellants' claim from the beginning. The majority recitals as to purported mailings of notices by the District do nothing to diminish this claim. As the majority recognizes (likewise in a footnote) the trial court made a specific finding that appellant Coleman did not receive the notice of expiration "courtesy" letter which is a part of the record. The purported "tax-sale notice"—described by a witness at first as a document which "would have been . . . mailed" and later as having been "mailed"—is not a part of the record and thus understandably was not treated in the trial court's memorandum opinion, holding, "regrettably," that compliance with publication requirements resulted in effective transfer.

at 314, 70 S.Ct. at 657. "[P]rocess which is a mere gesture is not due process," and "[i]t would be idle to pretend that publication . . . is a reliable means" of informing someone that a certain matter is pending, so that he or she may decide how to respond. *Id.* at 315, 70 S.Ct. at 657.

The general rule that emerges from *Mullane* is that notice by publication is unacceptable with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the action in question. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* Accord, *Schroeder v. City of New York*, 371 U.S. 208, 213, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); *Walker v. City of Hutchinson*, 352 U.S. 112, 115–16, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *New York v. New York, N. H. & H. R.R.*, 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953).[2]

I think the decision in the case before us is controlled by the rule enunciated in *Mullane* and applied ofttimes since. I would hold that the notice (by publication) given appellants prior to the tax sale of their home was constitutionally deficient and that the tax sale was therefore invalid.[3]

The sale, under the circumstances here, is, moreover, contrary to the scheme and purpose of statutory enactments. Thus D. C.Code 1973, § 47–903, states that:

No family dwelling-house occupied by the owner thereof shall be sold for delin-

quent personal or real-estate taxes or special assessments unless notice has been personally served upon such owner or sent by registered mail, addressed to him at such dwelling-house, not less than thirty days prior to the date of such sale.

However, appellees argue, and the majority seems to agree, that Section 47–903 is inapplicable to appellants by virtue of Section 47–905:

This chapter shall be deemed as applying only to such occupant and owner as shall have filed with the assessor of the District of Columbia an affidavit as to domicile and ownership. The form of the affidavit shall be prepared by the assessor of the District of Columbia, and shall show the beginning of domicile, the time when ownership began, the street number, the number of the square and lot, and all trusts, if any, against the property.

Appellees' restrictive reading of Section 47–905 exalts form over substance. Moreover, it exposes the tax sale procedure to grave constitutional attack since by its operation, homeowners are denied any notice of sale other than by publication. But the statute's constitutionality can be upheld and the intent of Congress furthered by a common sense interpretation. The provisions of Title 47, Chapter 9, directed to "Family Dwellings Occupied by Owners," reflect a special concern for resident homeowners. The evident congressional intent was to prevent forfeiture whenever possible. Such intent, however, is totally defeated by

2. "Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best." *New York v. New York, N. H. & H. R.R.*, supra at 296, 73 S.Ct. at 301.

3. Accord, *Scoggin v. Schrunk*, 344 F.Supp. 463 (D.Ore.1971), rev'd on other grounds, 522 F.2d 436 (9th Cir. 1975), cert. denied, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); *Johnson v. Mock*, 19 Ariz.App. 283, 506 P.2d 1068 (1973); *Laz v. Southwestern Land Co.*, 97 Ariz. 69, 397 P.2d 52 (1964)

(en banc); *Chapin v. Aylward*, 204 Kan. 448, 464 P.2d 177 (1970); *Pierce v. Bd. of County Comm'rs of Leavenworth County*, 200 Kan. 74, 434 P.2d 858 (1967). See also *Wisconsin Elec. Power Co. v. City of Milwaukee*, 352 U.S. 948, 77 S.Ct. 324, 1 L.Ed. 2d 241 (1956) (per curiam), on remand, 275 Wis. 121, 81 N.W.2d 298 (1957); *Wager v. Lind*, 389 F.Supp. 213 (S.D.N.Y.1975). See generally Note, *The Constitutionality of Notice by Publication in Tax Sale Proceedings*, 84 Yale L.J. 1505 (1975).

the interpretation adopted by the majority. In order for Section 47–903 to have the effect Congress clearly intended, Section 47–905's statement that "The form of the affidavit shall be prepared by the assessor of the District of Columbia . . ." must, I think, be read as placing on the District the burden of notifying resident homeowners of the provisions of Chapter 9 or at the very least providing them with the requisite affidavit.[4]

Certainly all of the information required by the affidavit was available in the Tax Assessor's Office. Ms. Coleman went to that office in 1960 after her aunt's death specifically to ensure that all official records were accurate. Moreover, she has visited that office many times since. It is inherently and grossly unfair for the District now to assert that her home can be sold without prior notice to her because she failed to file a paper which only it could provide.[5]

For all these reasons I am singularly unimpressed by the majority's assertion that it feels constrained to affirm because of two prior decisions of this court, *Dodson v. Scheve,* D.C.App., 339 A.2d 39 (1975), and *Moore v. District of Columbia,* D.C.App., 332 A.2d 749 (1975). Neither decision is controlling here. *Moore* involved a challenge by nonresident heirs whose names did not appear as record owners in the Office of the Recorder of Deeds nor in the Office of the Tax Assessor, and the government showed that in that instance a notice of the impending tax sale had been sent to the record owner (decedent) at his last known address. In *Dodson v. Scheve,* the court expressly declined to reach either of the two grounds on which I would base reversal, namely, the constitutional sufficiency of notice prior to the sale and the proper construction of Sections 47–903 and 47–905.[6]

I share the sentiments expressed by Judge Pair in *Dodson:*

> . . . I perceive basic unfairness in the system which on the one hand frustrates, in effect, the will of the Congress as expressed in D.C.Code 1973, § 47–903, and on the other gives aid and comfort to those who are permitted to profit a thousandfold at the expense of the poor, the ignorant and the less alert.[7]

[*Dodson v. Scheve, supra,* 339 A.2d at 42 (Pair, Associate Judge, Retired, concurring and dissenting).]

I would reverse.

4. According to the trial testimony of Mr. Alfred L. Richards of ˌthe D.C. Department of Finance and Revenue, Assessment Services Division, the District of Columbia Government makes no effort to inform citizens of ·any of the special provisions of Title 47, Chapter 9.

5. Appellees suggest that the harshness of the result here is somehow mitigated by the fact that Ms. Coleman was familiar with tax sale and redemption procedures. It seems to me that the fact that she or other homeowners had for many years taken advantage of the two year redemption period is an added rea-son why personal notice was required, particularly when the sale date was changed after forty years.

6. *See Dodson v. Scheve, supra* 339 A.2d at 40 and nn. 1 & 3.

7. When Ms. Coleman called appellee Scheve to implore him to allow her to redeem her property, Mr. Scheve flatly rejected her request and instead offered to permit her to buy it back from him at its current market value or, alternatively, to lease it from him for two hundred dollars ($200.) per month. As noted above, Mr. Scheve paid $294.09 for the property.