74 N.J. 1 (1977)
376 A.2d 909
TOWNSHIP OF MONTVILLE, A MUNICIPAL CORPORATION IN THE COUNTY OF MORRIS AND STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BLOCK 69, LOT 10, ASSESSED TO ANTON SPITZ AND IDA SPITZ, BLOCK 56, LOT 16, ASSESSED TO JOHN H. HIXSON, BLOCK 98, LOT 12, ASSESSED TO WAYNE P. AND SUE ANN VAN DUYNE, DEFENDANTS, AND BLOCK 39, LOTS 1, 75B, 75C, 90, 91 AND 92, ASSESSED TO MONTVILLE INDUSTRIAL PARK, INC., DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued October 25, 1976.
Decided June 9, 1977.
*3 Mr. Martin M. Friedman argued the cause for appellant (Messrs. Friedman, Kates, Uscher & Pearlman, attorneys).
Mr. Lawrence K. Eismeier argued the cause for respondent (Messrs. Young & Sears, attorneys).
The opinion of the court was delivered by PASHMAN, J.
*4 This case involves the constitutionality of the notice procedures prescribed by the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq. The corporate landowner, which moves to reopen a final judgment of foreclosure by the municipality, argues that the act's requirements of notice by publication and posting fall short of constitutionally guaranteed procedural due process. In doing so, it challenges the continued viability of this Court's decision in City of Newark v. Yeskel, 5 N.J. 313 (1950), which upheld these procedures against similar constitutional objections.
Both the trial court and the Appellate Division rejected the landowners constitutional argument. In affirming the Law Division's denial of the taxpayer's motion, the Appellate Division noted that Yeskel was controlling and stated that any change in its holding had to be made by this Court. We granted certification, 69 N.J. 392 (1976). For the reasons set forth below, we reverse. We hold that the notice provisions of the In Rem Tax Foreclosure Act are unconstitutional under the State and Federal Constitutions and therefore we are constrained to overrule Yeskel.

I
This appeal originates from a complaint filed by the plaintiff Township of Montville on May 8, 1973 pursuant to the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq. The complaint sought to bar all rights of redemption to various pieces of property, including six parcels of land assessed to the instant landowner, Montville Industrial Park, Inc. As required under the Act, N.J.S.A. 54:5-19 et seq., each of the parcels had previously been the subject of a tax sale: one tax sale certificate, indicating that a parcel had been sold to the municipality for unpaid taxes, was recorded on December 26, 1967; tax sale certificates for the remaining parcels, also indicating their sale to the municipality, were recorded on January 13, 1967.
*5 Prior to instituting the foreclosure action, the municipality had given the taxpayer several warnings that taxes on the properties in question had not been paid. In compliance with requests by the corporate landowner, the township tax collector mailed statements of tax arrearages to the landowner on June 3, 1971, June 22, 1972 and March 28, 1973. The first statement advised the taxpayer that "[i]f the properties are to be redeemed, please contact this office as soon as possible as they are in the hands of our attorney and in the process of foreclosure." The second letter noted that the most heavily assessed parcel "may not be redeemable, [and] must be checked with attorney." [sic]
Neither these letters nor any other communications actually informed the taxpayer that a complaint had been filed seeking to permanently bar it from exercising its statutory right to redeem the property. Although the tax collector knew the address of the corporation, he followed the mandatory provisions of the in rem statute, which only require notice by posting and publication.[1] On August 1, 1973 *6 a final judgment of foreclosure was entered barring the taxpayer's right of redemption. As of April 1, 1973, the total taxes, interest and other charges against the property amounted to $79,092.17. Its assessed value for 1974 was $306,100.
A timely motion to reopen the judgment was filed by the corporation on October 25, 1973. In addition to attacking the constitutionality of the Act, it also alleged various procedural irregularities.[2] Subsequently, counsel for the corporation offered to settle the matter by paying all back taxes, interest, costs and fees. This offer was informally accepted by the municipality but later rejected. On May 21, 1974 an order denying the taxpayer's motion was entered.

II
The question which this case presents is whether or not notice by publication is constitutional in a foreclosure of tax delinquent premises where the municipality possesses the name and address of the owner but fails to give notice by mail or otherwise to that address. As in other cases involving due process claims, the Court must first decide whether the Due Process Clause applies to this type of governmental action, and then determine "what process is due." Morrissey v. Brewer, 408 U.S. 471, 481-483, 92 S.Ct. 2593, 33 L.Ed.2d 484, 494-495 (1972); Dow v. State, 396 Mich. 192, 240 N.W.2d 450, 455 (1976); Note, "Specifying the Procedures Required by Due Process: Toward Limits *7 on the Use of Interest Balancing," 88 Harv. L. Rev. 1510 (1975).

A
It can hardly be doubted that interests in real estate are protected by the Due Process Clause. The Fourteenth Amendment to the Federal Constitution provides: "No State shall make or enforce any law which shall .... deprive any person of life, liberty or property, without due process of law." This is consistent with Article I, par. 1 of our State Constitution, which also protects a person's right to acquire, possess, and protect property.[3] That the property interests mentioned in both Constitutions refer to interests in real estate have been settled by innumerable decisions by both this Court and the United States Supreme Court. See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 571-72, 92 S.Ct. 2701, 33 L.Ed.2d 548, 557 (1972); Jones v. Haridor Realty Corp., 37 N.J. 384, 391 (1962) ("There is no doubt that the right to acquire, own and dispose of real property is within the protective scope of the Fourteenth Amendment, or that such right is recognized by Article I, paragraph 1, of our State Constitution.")
Applicability of the Due Process Clause is not affected by the municipality's sale of the property for unpaid taxes and issuance of a certificate to the purchaser. State law, which is controlling on whether or not there is a property interest,[4] uniformly holds that a tax sale alone is not an *8 outright conveyance of the property in question and does not constitute a final irrevocable divestiture of title. Brewer v. Porch, 53 N.J. 167 (1969); Newark v. Sue Corp., 124 N.J. Super. 5, 7 (App. Div. 1973); Clark v. Jersey City, 8 N.J. Super. 33, 37 (App. Div. 1950). Cf., Grasso v. Deiter, 126 N.J. Super. 365 (App. Div. 1974). Thus, it has been held that a statute taking away, reducing the time for or otherwise impairing a right of redemption which has already vested, would be an unconstitutional deprivation of property rights. Harrington Co. v. Chopke, 108 N.J. Eq. 297, 301 (Ch. Div. 1931), aff'd 110 N.J. Eq. 574 (E. & A. 1932); Rodgers v. Cressman, 98 N.J. Eq. 209 (Ch. Div. 1925).
It is beyond question that any procedure which deprives an individual of a property interest must conform to the dictates of the Due Process Clause. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18, 32 (1976); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Accordingly, the United States Supreme Court has held that procedural due process applies where state law does not entirely extinguish the taxpayers' property interest until foreclosure. See Nelson v. New York, 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956) (tax foreclosure proceeding measured against due process requirements); Covey v. Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) (same).[5]
*9 Although the Supreme Court dismissed an appeal for want of a substantial federal question where the statute in question did utilize the foreclosure procedure to terminate the landowner's interest, Botens v. Aronauer, 414 U.S. 1059, 94 S.Ct. 562, 38 L.Ed.2d 464, dismissing appeal from 32 N.Y.2d 243, 344 N.Y.S.2d 892, 298 N.E.2d 73 (1973), in that case mail notice was actually given. See Note, "The Constitutionality of Notice by Publication in Tax Sale Proceedings," 84 Yale L.J. 1505, 1510 (1975). The judge in Wager v. Lind, 389 F. Supp. 213 (S.D.N.Y. 1975) correctly assessed Botens, supra, when he said: "I am not prepared to say that the Supreme Court in its summary dismissal did more than declare the lack of a substantial federal question on the precise facts Botens presented to it." Id. at 216; emphasis in original. See also, Comment, "The Presidential Weight of a Dismissal by the Supreme Court for Want of a Substantial Federal Question: Some Implications of Hicks v. Miranda," 76 Colum. L. Rev. 508 (1976). In referring to Botens, supra, and Wager, supra, the Comment states: *10 [W]hen the Supreme Court dismisses a challenge to a state statute, it does not necessarily mean that the statute is valid under all circumstances; it signifies only that the challenge is not a `substantial' one in the precise circumstances of that case.
[76 Colum. L. Rev. at 532]

B
Having determined that due process principles apply when the owner's right to redemption is to be terminated, we turn to the remaining question of whether or not notice by publication satisfies the requirements of that clause under state and federal guarantees. We hold that it affords insufficient protection for landowners under both constitutional provisions.

1.
The seminal case in this area is Mullane v. Central Hanover B. & T. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). There it was stated:
An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections, * * * The notice must be of such nature as reasonably to convey the required information, ..., and it must afford a reasonable time for those interested to make their appearance.
[339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873; emphasis supplied.]
In that case the Court considered the sufficiency of notice by publication in a New York Statute governing the administration of trust funds. Since the statute required only notice by publication to known trust beneficiaries who might be affected by a proposed pooling of smaller trusts, the Court held the statute unconstitutional under the Fourteenth Amendment. Justice Jackson, writing for the majority, stated:
*11 As to known beneficiaries of known place of residence, ..., notice by publication stands on a different footing. Exceptions in the name of necessity, do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.
[339 U.S. at 318, 70 S.Ct. at 659, 94 L.Ed. 875]
Significantly, Mullane discarded the fictional distinction between in rem and in personam actions which had been utilized as a basis for upholding notice by publication in several decisions decided at the turn of this century.[6]See, e.g., North Laramie Land Co. v. Hoffman, 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953 (1925); Ballard v. Hunter, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461 (1907); Leigh v. Green, 193 U.S. 79, 24 S.Ct. 390, 48 L.Ed. 623 (1904); Huling v. Kaw Valley R. & Improv. Co., 130 U.S. 559, 9 S.Ct. 603, 32 L.Ed. 1045 (1889); Winona & St. Peter Land Co. v. Minnesota, 159 U.S. 526, 16 S.Ct. 83, 40 L.Ed. 247 (1895); Longyear v. Toolan, 209 U.S. 414, 28 S.Ct. 506, 52 L.Ed. 859 (1908). Noting that this distinction was more appropriate under the substantive law of property as it existed under the ancient Roman law, the Court foreclosed any contention that procedural due process might depend upon whether an action was technically in personam or in rem. The Court concluded:
[W]e think that the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive and confused generally and which, being primarily for state courts to define, may and do vary from state to state.
[339 U.S. at 312, 70 S.Ct. at 656, 94 L.Ed. at 872]
*12 Two months after the United States Supreme Court decided Mullane, this Court upheld the constitutionality of the In Rem Tax Foreclosure Act in City of Newark v. Yeskel, 5 N.J. 313 (1950). Rather than follow the Supreme Court's application of due process principles to in rem proceedings, this Court distinguished Mullane. It attempted to draw a distinction between notice required in a "proceeding by a political subdivision of the state to enforce the payment of taxes which have been regularly assessed and levied," and other proceedings which impinge less directly on governmental interests, such as the trust account procedure implicated in Mullane. 5 N.J. at 321. In light of subsequent decisions applying the general principles announced in Mullane to a wide variety of proceedings which impinge directly on governmental interests, this distinction can no longer be considered tenable. See, e.g., Robinson v. Hanrahan, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed. 2d 47 (1972) (notice by certified mail to automobile owner's home violated due process in forfeiture proceedings where the state knew that the owner was being held in the county jail); Schroeder v New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed. 2d 255 (1962) (posting near premises and publication insufficient notice in condemnation proceeding); Walker v. Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (newspaper publication alone violates due process in condemnation proceeding); New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (publication insufficient notice under bankruptcy reorganization). In none of the above cases did the Court find that publication was a sufficient substitute for mail notification. Indeed, in Robinson v. Hanrahan, supra, the Court held that even mail notice under the circumstances did not meet the constitutional test of notice reasonably calculated to apprise interested parties of the pendency of proceedings.
The position adopted in Yeskel has been undercut even more dramatically by the application of the general principles in Mullane specifically to in rem procedures. For instance in *13 Covey v. Somers, supra, the Court held that an incompetent landowner who received only mail notification of an impending foreclosure of tax delinquent premises was denied due process. In requiring special protection for the taxpayer in that case, the Court reiterated the general rule:
An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-315, 70 S.Ct. 652, 94 L.Ed. 865, 873, 874.
[351 U.S. at 146, 76 S.Ct. at 756, 100 L.Ed. at 1026]
In Nelson v. New York, 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956), the Court held that a landowner was not deprived of due process where mail notification of a foreclosure was sent, but misplaced by the taxpayer's bookkeeper. However, its holding clearly indicated that Mullane was applicable to the type of foreclosure statute involved in that case:
We conclude, therefore, that the City having taken steps to notify appellants of the arrearages and the foreclosure proceedings and their agents having received such notices, its application of the statute did not deprive appellants of procedural due process
[352 U.S. at 108, 77 S.Ct. at 198, 1 L.Ed.2d at 175]
Elsewhere in the opinion the Court reaffirmed the conclusion that due process requirements apply to foreclosure proceedings:
We hold that nothing in the Federal Constitution prevents [foreclosure] where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings.
[352 U.S. at 110, 77 S.Ct. at 199, 1 L.Ed.2d at 176]
Equally important, we cannot accept the Yeskel court's apparent conclusion that the efficient operation of the municipality's *14 tax system outweighs any constitutional claims to notice and an opportunity to be heard prior to foreclosure. While the importance of the government's taxing power cannot be ignored, we must not forget that governmental concern for convenience or simplicity does not outweigh individual rights. This was made clear by the United States Supreme Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) when it stated:
The Constitution of course obliges this Court to give full recognition to the taxing powers and to measures reasonably incidental to their exercise. But we are equally obliged to give full effect to the constitutional restrictions which attend the exercise of those powers.
[390 U.S. at 58, 88 S.Ct. at 707, 19 L.Ed.2d at 903.][7]
In fact, abuses of the tax power, more than any other factor, led to the adoption of constitutional guarantees to protect against future government excesses.[8]See, G.M. Leasing Corp. *15 v. U.S., 429 U.S. 338, 355, 97 S.Ct. 619, 630, 50 L.Ed. 2d 530 (1977), (noting that "one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and units of assistance.")

3.
There should be little doubt that under the Mullane test notice by publication is insufficient in a tax foreclosure proceeding where a landowner's name and address are at hand. Although Yeskel emphasized dicta in Mullane which might be read as supporting notice by publication, that language refers only to a situation in which publication is used in conjunction with other steps which are likely to notify a landowner that he is about to be deprived of his property. The Court in Mullane stated:
Nor is publication here reinforced by steps likely to attract the parties' attention to the proceeding. It is true that publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning. * * * Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of the law may reasonably be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification.
[339 U.S. at 316, 70 S.Ct. at 658, 94 L.Ed. at 874; emphasis added.]
The Court clearly noted its rejection of publication unaccompanied by any other notice: *16 Publication may theoretically be available for all the world to see, but it is too much to suppose that [a person] does or could examine all that is published to see if something may be tucked away in it that affects his property interests.
[339 U.S. at 320, 70 S.Ct. at 660, 94 L.Ed. at 876.]
Although the Supreme Court has stated that there is no mechanical rule for determining "what process is due," see Schroeder v. New York, supra, 371 U.S. at 212, 83 S.Ct. at 282, 9 L.Ed.2d at 259; Walker v. Hutchinson, supra, 352 U.S. at 116, 77 S.Ct. at 202, 1 L.Ed.2d at 182, it has repeatedly found that notice by publication is insufficient where the names and addresses of persons to receive such notice are known. In Schroeder, the Court repeated the criticism of notice by publication which it had stated in Mullane:
Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. 339 U.S. at 315, 70 S.Ct. at 652.
[371 U.S. at 212, 83 S.Ct. at 282, 9 L.Ed.2d at 259]
The same theme is also repeated elsewhere in the opinion in the form of a rule:
The general rule that emerges from the Mullane case is that notice by publication is not enough with respect to a person whose name and address are known....
[Id. at 212-213, 83 S.Ct. at 282, 9 L.Ed. at 259]
Other opinions reinforce this conclusion. See Walker v. Hutchinson, supra, 352 U.S. at 116, 117, 77 S.Ct. at 203, 1 L.Ed.2d at 182, 183 ("It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property * * * In too many instances notice by publication is no notice at all."); New York v. New York, N.H. & H.R. Co., supra, 344 U.S. at 296, 73 S.Ct. *17 at 301, 97 L.Ed. at 336 ("Notice by publication is a poor and sometimes a hopeless substitute for actual service by notice. Its justification is difficult at best.")
Given the Court's repeated statements that due process demands nothing less than notice which is reasonably calculated to inform any interested party, it is clear that newspaper publication would suffice only where it is not reasonably possible or practicable to give more adequate notice. Numerous courts have so held. See, e.g., Ricker v. United States, 417 F. Supp. 133 (N.D. Me. 1976); Scoggin v. Schrunk, 344 F. Supp. 463 (D. Or. 1971), rev. on other grounds, 522 F.2d 436 (9 Cir.1975) cert. den. 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); Laz v. Southwestern Land Co., 97 Ariz. 69, 397 P. 2d 52 (en banc 1964); Olsen v. Goss, 26 Ariz. App. 172, 547 P.2d 24 (Ct. App. 1976); Johnson v. Mock, 19 Ariz. App. 283, 506 P.2d 1068 (Ct. App. 1973); Bd. of Sedgwick County Commissioners v. Fugate, 210 Kan. 185, 499 P.2d 1101 (1972); Pierce v. Bd. of County Comm'rs of Leavenworth Co., 200 Kan. 74, 434 P.2d 858 (1967); Dow v. State, 396 Mich. 192, 240 N.W.2d 450 (1976); Note, "The Constitutionality of Notice by Publication in Process in Tax Sales in New York: The Insufficiency of Notice by Publication," 25 Syr. L. Rev. 769 (1974); Note, "Requirements of Notice in In Rem Proceedings," 70 Harv. L. Rev. 1257, 1267-68 (1957); Note, 5 Rutgers L. Rev. 425 (1950). Cf., Balthazar v. Mari Ltd., 301 F. Supp. 103 (N.D. Ill. 1969), aff'd p.c. 396 U.S. 114, 90 S.Ct. 397, 24 L.Ed.2d 307 (1969); Fisher v. Muller, 53 Mich. App. 110, 218 N.W.2d 821 (Ct. App. 1974) (failure to give mail notice of tax increase barred subsequent tax lien and sale); Meadowbrook Manor, Inc. v. St. Louis Park, 258 Minn. 266, 104 N.W.2d 540 (1960) (notice by publication insufficient in special assessment). But see, McMaster v. Santa Rosa, 27 Cal. App.3d 598, 103 Cal. Rptr. 749 (Ct. App. 1972); Botens v. Aronauer, supra; Cascade Tree Farms, Inc. v. Clackamas County, 250 Or. 401, 442 P.2d 606 (en banc 1968); Umatilla County v. Porter, *18 12 Or. App. 393, 507 P.2d 406 (Ct. App. 1973); Marlowe v. Kingdom Hall of Jehovah's Witnesses, 541 S.W.2d 121 (Sup. Ct. Tenn. 1976).

4.
We also believe that the notice requirements of the statute are violative of due process under our State Constitution. While we have not yet specifically addressed ourselves to the problem of notice under Art. 1, par. 1, we have at various times interpreted the state provision to substantially encompass rights guaranteed under the Federal Constitution, see Penn.-Reading S.S. Lines v. Bd. of Pub. Utility Comm'rs, 5 N.J. 114-26 (1950), cert. den. 340 U.S. 876, 71 S.Ct. 122, 95 L.Ed. 637 (1950); Washington Nat'l Ins. Co. v. Bd. of Review, 1 N.J. 545 (1949), including the right to a hearing where governmental action affects an individual's property interests. See Cunningham v. Dept. of Civil Service, 69 N.J. 13, 19 (1975); McFeely v. Bd. of Pension Comm'rs, 1 N.J. 212, 216 (1948). Our interpretation of the State Constitution need not rest on the Supreme Court's interpretations of similar provisions. In fact, we have at times interpreted our State Constitution to provide greater protections than those existing under analogous Federal provisions. See, State v. Johnson, 68 N.J. 349 (1975); Robinson v. Cahill, 62 N.J. 473, 490 (1973) (dictum), cert. den. sub nom., Dickey v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973); So. Burlington Cty. NAACP v. Tp. of Mt. Laurel, 67 N.J. 151 (1975), cert. den. and appeal dism'd, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); King v. So. Jersey Nat. Bank, 66 N.J. 161, 180 et seq. (Pashman, J., dissenting). Nevertheless, we are satisfied that under the facts of this case, the interpretation given the Due Process Clause by the United States Supreme Court under Mullane and Covey offers a sound basis for interpreting our similar state provision. Cf., State Bd. of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 518 (E. & A. 1935). *19 Accordingly, we hold that Art. I, par. 1 of our State Constitution provides an independent ground for our decision today.

III
The minimal effort necessary to provide due process undercuts any argument of governmental necessity which might be raised in justification of the statute. See Schroeder v. New York, supra, 371 U.S. at 214, 83 S.Ct. at 283, 9 L.Ed.2d at 260 (Notice is "an obligation which the mailing of a single letter would have discharged"); Dow v. State, 46 Mich. App. 101, 207 N.W.2d 441, 447 (1973) (Gillis, J., dissenting), rev'd Dow v. State, supra ("All such a holding would require is the use of a postage stamp"). The burden imposed by this duty hardly outweighs an individual's interest in retaining possession of a home which may have been purchased with a lifetime's worth of earnings, or property necessary to sustain a family's income. In the instant case the owner will lose property valued at $306,000 to satisfy a tax lien totaling $79,029.17. See also, Scoggin v. Schrunk, supra (land worth $10,000 sold for unpaid street assessment of only $209.37); Wager v. Lind, supra (home worth $15,000 sold for $174.37 in back taxes). As Justice Oliphant concluded, dissenting in Yeskel:
[T]o divest ownership without personal notice and without direct compensation out of the excess value is the instance where constitutional government approaches most nearly to an unrestrained tyranny. Redemption is the last chance of a citizen to recover his property.
[5 N.J. at 339.]
Consequently, we hold under both state and federal constitutional guarantees, that where an owner's name and address appear on the municipality's tax rolls, notice must be sent by mail before a taxpayer's right to redeem his property *20 may be foreclosed.[9] In order to avoid upsetting settled titles based on foreclosure proceedings, we grant the requested relief to the landowner in this case, but hold that our decision should be applied prospectively only. See State v. Nash, 64 N.J. 464 (1974); Note, supra, 84 Yale L.J. at 1517; Note, "Notice by Publication: Walker v. City of Hutchinson," 24 U. of Chicago L. Rev. 553, 560 (1975). Accordingly, where a complaint is filed against an owner in a foreclosure proceeding after the date of this decision, or is presently pending, the municipality must mail notice to him before his right of redemption may be barred. We also note that an affidavit of compliance with this requirement should be filed by the municipality in the foreclosure proceeding. This procedure would remove any title objection arising from this opinion.
The lower court's denial of the motion to reopen the final in rem foreclosure proceeding is reversed.
CONFORD, P.J.A.D., Temporarily Assigned, dissenting.
The Court today overrules City of Newark v. Yeskel, 5 N.J. 313 (1950), and holds the notice provisions of the In Rem Tax Foreclosure Act (1948), N.J.S.A. 54:5-104.29 et seq., to be invalid as a deprivation of due process to the owner of the property foreclosed. I dissent because I believe Yeskel was correctly decided; that the In Rem procedures serve an extremely important public interest; *21 and that property owners are not visited with any essential injustice by the operation of the statute. Finally, as will be noted in detail, the United States Supreme Court has on several recent occasions deliberately eschewed ready opportunities to make the kind of due process holding in a tax foreclosure case which this Court announces today. I would refrain from such a holding until and unless compelled to do so by the Supreme Court.
Although not material to the strictly legal issues before us, I believe it warrants mention that upholding the statutory procedure in the present case would not work any injustice on the instant appellant as it was repeatedly warned that its properties were being, or about to be, foreclosed for tax arrearages, and did nothing about it until after the foreclosures were an adjudicated finality.

I
The basic contention projected by defendant's appeal is that where the municipal officials concerned know the taxpayer's name and address, notice of the actual filing of the tax foreclosure proceeding must be sent to the taxpayer at that address as a minimal requirement of federal constitutional due process. The seminal modern case theoretically supportive of the view that due process requires actual rather than constructive notice of any proceeding in which final adjudication of a person's rights or interests is to take place is Mullane v. Central Hanover B. & T. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It was there held that notice by publication to beneficiaries of a statutory common trust fund of an application by the trustee for approval of its account, as provided for by a New York statute, did not meet minimal requirements of due process. The court there broadly stated (Id. at 314, 70 S.Ct. at 657):
An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties *22 of the pendency of the action and afford them an opportunity to present their objections.
Notice by publication was held not to meet that standard. Mullane has been a major foundation stone in the more recent application of the principle stated, directly or indirectly, to a wide variety of settings by the Supreme Court. See, e.g., Walker v. Hutchinson, 352 U.S. 112, 115-116, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (condemnation); New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (bankruptcy); Schroeder v. New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (condemnation); North Georgia Finishing v. Di-Chem, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (garnishment); Covey v. Town of Somers, 351 U.S. 141, 146, 76 S.Ct. 724 (1956) (tax foreclosure as against incompetent owner). The controlling effect of the Mullane doctrine, as a matter of general principle, cannot of course be gainsaid. The critical question for our resolution is whether municipal tax foreclosure proceedings, upon which the Supreme Court has not yet squarely ruled in this regard, constitute a legitimate exception to the Mullane principle for reasons of public policy, reasonableness and fair imputation of notice to those affected.
Mullane had been recently decided when this court first passed upon and sustained the constitutionality of the in rem statutory notice provisions in City of Newark v. Yeskel, supra. The court distinguished Mullane as follows (5 N.J. at 321-322):
* * * The difference between a proceeding for the settlement of a trust account by a banking institution and a proceeding by a political subdivision of the state to enforce the payment of taxes which have been regularly assessed and levied is patent. The court, in the Mullane case, in discussing the rights of owners of tangible property within a state to notice of proceedings affecting such property, said:
"* * * When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state *23 either has abandoned it, in which case proceedings against it deprive him of nothing. Cf. Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692; Security Savings Bank v. California, 263, U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301; or that he has left some caretaker under a duty to let him know that it is being jeopardized. Ballard v. Hunter, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461; Huling v. Kaw Valley R. Co., 130 U.S. 559, 9 S.Ct. 603, 32 L.Ed. 1045. As phrased long ago by Chief Justice Marshall in The Mary, 9 Cranch, 126, 144, 3 L.Ed. 678, `It is the part of common prudence for all those who have any interest in (a thing) to guard that interest by persons who are in a situation to protect it.'"
The essential rationale of Yeskel can be paraphrased by saying that realty taxes are the lifeblood of municipal government; that their ready collection and an effective and inexpensive means for enforcement of the public lien therefor are peculiarly vital to the public welfare; and that these facts support the justice of the concept that all who have an interest in a parcel of realty, knowing that taxation thereof is certain and the enforcement of the public lien therefor mandatory and inexorable, must either see to the payment of taxes when due or place themselves on continuous notice and inquiry of the steps taken in the enforcement of the public lien through the ultimate proceedings for foreclosure of the right of redemption. See 5 N.J. at 318-319. Cf. Bron v. Weintraub, 42 N.J. 87, 91-92 (1964). Those cases in the United States Supreme Court which have heretofore expressly addressed the question have consistently upheld the stated philosophy, although sometimes by assumptions which may not independently withstand critical analysis.[1] See Huling v. Kaw Valley Railway and Improvement Co., 130 U.S. 559, 9 S.Ct. 603, 32 L.Ed. *24 1045 (1889); Winona & St. Peter Land Co. v. Minnesota, 159 U.S. 526, 16 S.Ct. 83, 40 L.Ed. 247 (1895); Leigh v. Green, 193 U.S. 79, 24 S.Ct. 390, 48 L.Ed. 623 (1904); Ballard v. Hunter, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461 (1907); Longyear v. Toolan, 209 U.S. 414, 28 S.Ct. 506, 52 L.Ed. 859 (1908); North Laramie Land Co. v. Hoffman, 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953 (1925).
The history of statutory procedures in this State for realization upon municipal tax liens prior to the adoption in 1948 of the In Rem Tax Foreclosure Act lends point to the public-policy underpinning of the rationale for dispensation of personal notice to parties in interest discussed above. There were two methods of perfection of a tax title after the tax sale: (a) by notice to redeem; (b) by bill in Chancery to bar the equity of redemption. In neither case could the right to redeem be barred in less than two years from the date of the tax sale. N.J.S.A. 54:5-77; N.J.S.A. 54:5-86. Since the notice to redeem had to be given to "all persons interested in the land", N.J.S.A. 54:5-77, it entailed the expense of a full title search. Title examinations in the 1940's could cost upward of $100 plus an attorney's fee. Moreover, that method was unavailable against infants and incompetents so long as the impediment continued. N.J.S.A. 54:5-84. It was thought that lack of judicial supervision of the procedure cast some doubt on its efficacy to establish good title. See First Report of the Commission on State Tax Policy (1946) p. 45 ("Commission Report" hereinafter).
Foreclosure by bill also entailed a full search of the title and incidental expenses and costs of the chancery proceeding itself. This could run a total expense of $400 plus attorneys fees in a matter complicated by the presence of numerous parties in interest even though the land involved was vacant and of an assessed value of only $1,100. Albano, "`In Rem'  Memorandum on Advisability of Such *25 Proceedings in New Jersey", 1947 New Jersey Municipalities p. 25.[2]
Adding to the difficulties of converting tax liens into municipal cash was the former traditional hostility of the courts to tax title purchasers vis a vis claimants for redemption. See Wittes v. Repko, 105 N.J. Eq. 241 (Ch. 1929), aff'd 107 N.J. Eq. 132 (E. & A. 1930); Bonded Certificate Corp. v. Wildey, 137 N.J. Eq. 564 (E. & A. 1946). This, in turn, fostered reluctance of title companies to insure tax titles, thereby impairing their salability by municipalities and reducing the proceeds to be realized from such sales. See Note, "Tax Sale Law in New Jersey: A Re-Examination", 26 Rutgers L. Rev. 266, 276 (1973).
The movement toward adoption of the In Rem Tax Foreclosure Act was also promoted by the fact that the conditions described above led to delay by municipalities in instituting foreclosures on so-called "deadwood" tax liens; this, in turn, resulted in such property continuing as a tax ratable for which, although unproductive, the municipality was charged county and state taxes. Commission Report, supra, at 42.
The first in rem tax foreclosure act adopted in New Jersey was L. 1947, c. 333. This act was immediately felt to be unsatisfactory. See the statement accompanying the bill which as enacted became L. 1948, c. 96, the present in rem statute. The 1947 act required not only publication and posting of the notice of foreclosure but also its mailing to the "last known address of each last known owner" of the property as the same appeared in the county and municipal tax record, but the statute stated that "the failure of any person to receive such notice by mail should not affect the *26 validity of any proceedings brought pursuant to this act". C. 333, sec. 15. However, by section 14, it was provided that if any person claiming an interest in or lien upon the property requested in writing that the tax collector send him notice of institution of a proceeding the notice was to be sent to the person at the address specified within 15 days after institution of the proceeding, and no final judgment could be entered without the filing of proof of such mailing. There was no saving clause as to validity in event of failure of such mailing, as there was in section 15.
Objection to the section 14 mandatory notice requirement appears to have been one of the principal reasons for the dissatisfaction with the 1947 act which led to its supercession by the 1948 act. According to a letter dated December 22, 1975 by George H. Bohlinger, Jr., New Jersey Revisor of Statutes, who was active in the drafting of the bill which became L. 1948, c. 96 on behalf of the New Jersey Institute of Municipal Attorneys, a sponsor of the legislation, leading title companies indicated they would not insure titles based upon foreclosures under the 1947 act. As there stated:
* * * A point was made that the tax collector's office was not such office of public record where the demands for notice and the proof of service of notice could be safely and permanently kept. Additionally, it was felt that in many municipalities the tax collector's office was not and could not be adapted to an office of public record. Some tax collector's offices in small municipalities were then situated at the home of the tax collector. Some still may be.
Thus, the letter went on, it was possible that in some cases the notice might be given but the record of it lost or destroyed.[3]
*27 This court has summarized the reasons for the need of an in rem act which resulted in the 1948 statute as being "to reduce the excessive costs of foreclosing tax delinquent property and the desirability in rendering a marketable title to the purchaser * * *". Teaneck Tp. v. Block 427, Lots 9-10, 19 N.J. 386, 397 (1955).
The general provisions of the In Rem Tax Foreclosure Act (1948) are fully described in the Yeskel case. 5 N.J. at 323-325. The only mandatory notice requirements are for posting and publication. A significant subsequent amendment as of the time of institution of the instant petition for foreclosure in 1973 was the following. Whereas previously the action could not be instituted unless "for the four calendar years next preceding the commencement of the action, no part of any general land taxes levied and assessed against the land covered by such certificate [had] been paid", N.J.S.A. 54:5-104.34, the condition was reworded by L. 1968, c. 464 to read: "Unless * * * [a]ll or any portion of the general land taxes levied and assessed against the land for 48[4] months next preceding the commencement of the action * * * remains unpaid". Realty taxes are assessed annually, N.J.S.A. 54:4-1, but are payable quarterly on the first days of February, May, August and November of the current tax year, after which, if not paid, they are delinquent and become subject to stated penalties and interest. N.J.S.A. 54:4-66. It is thus apparent that as of the time of institution of the instant foreclosure delinquent property was safe from institution of foreclosure proceedings unless part or all of the quarterly payment tax obligation due for each of the sixteen quarters preceding such institution remained unpaid. This was patently a strong safeguard against sudden or precipitate forfeiture of an owner's property *28 for tax default. In the present case, for instance, some of the delinquencies dated back to 1966, all at least to 1967, and the foreclosure was not instituted until May 8, 1973 nor final judgment entered until August 1, 1973.
Notwithstanding the decision in Mullane and the broadening concepts of due process expressed by the United States Supreme Court subsequent thereto in the cases cited above and others relied upon by defendant, only a few state courts have repudiated the previous consensual view that due process does not require personal service or mailing of notice of tax foreclosure proceedings. See, e.g., Board of Sedgwick County Com'rs v. Fugate, 210 Kan. 185, 499 P.2d 1101 (Sup. Ct. 1972); Laz v. Southwestern Land Co., 97 Ariz. 69, 397 P.2d 52 (Sup. Ct. 1964); Dow v. State, 396 Mich. 192, 240 N.W.2d 450 (Sup. Ct. 1976), all proscribing notice by publication where the name and address of the landowner are known or readily obtainable. Also so holding is Scoggin v. Schrunk, 344 F. Supp. 463 (D. Or. 1971) rev'd on other grounds, 522 F.2d 436 (9th Cir.1975) cert. den. 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976). In accord, see Note, "The Constitutionality of Notice by Publication in Tax Sale Proceedings," 84 Yale L.J. 1505 (1975).
Recent decisions adhering to the majority view on the issue are Botens v. Aronauer, 32 N.Y.2d 243, 344 N.Y.S.2d 892, 298 N.E.2d 73 (Ct. App. 1973), app. dism. 414 U.S. 1059, 94 S.Ct. 562, 38 L. Ed 2d 464 (1973); Christie-Stewart, Inc v. Paschall, 502 P.2d 1265 (Okl. Sup. Ct. 1972), vacated and remanded, 414 U.S. 100, 94 S.Ct. 313, 38 L.Ed.2d 298 (1973); Umatilla County v. Porter, 12 Or. App. 393, 507 P. 2d 406 (Ct. App. 1973). In Botens, supra, the court distinguished the Mullane line of authority by saying that in those cases "the individuals had no reason to expect that their property interests were being affected. Such is not the situation in the case before us." 344 N.Y.S.2d at 896, 298 N.E.2d at 75.
The attitude of the United States Supreme Court on the subject as of this writing is uncertain. In Covey v. Town of *29 Somers, supra, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021, a tax foreclosure was held invalid, although notice was mailed to the taxpayer, because the municipal authorities knew the taxpayer was incompetent. The implication was that the town should have seen to the appointment of a guardian. Citing Mullane, supra, the court found a denial of due process, but its discussion does not allude to the earlier cases of the court upholding tax foreclosures lacking direct notice to the owner. In Nelson v. New York, 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed. 2d 171 (1956), the court affirmed the determination of the New York state courts that due process was satisfied by the mailing of notice to the trustee of the owner-estate notwithstanding that the agent of the trustee had neglected the matter and that the property foreclosed was sold for a much larger sum than the taxes in default, the city retaining the excess proceeds. Again, there was no allusion to the substantial body of law treating tax lien foreclosures as a casus sui generis for due process purpose.
A conscious effort by the Supreme Court to avoid facing the issue appears to have occurred in the Christie-Stewart, Inc. case, supra, where the Oklahoma Supreme Court sustained the validity of the notice-by-publication provisions of its tax sale act. The United States Supreme Court vacated the judgment and remanded for a determination by the Oklahoma court as to whether the appellant was bound on the non-constitutional state ground of statute of limitations. 414 U.S. 100, 94 S.Ct. 313, 38 L.Ed.2d 298 (1973), reh. den. 414 U.S. 1138, 94 S.Ct. 884, 38 L.Ed.2d 763 (1974). An appeal to the Supreme Court from the decision of the New York court in Botens v. Aronauer, supra, also upholding the due process aspect of notice by publication in respect to tax sale proceedings, was dismissed "for want of a substantial federal question". 414 U.S. 1059, 94 S.Ct. 562, 38 L.Ed.2d 464 (1973). As the Court of Appeals had noted in its opinion that it was "conceded that plaintiffs [owners] had not actually received the notice of redemption * * *" although "there was evidence to indicate the county treasurer *30 had mailed such a notice * * *", 344 N.Y.S.2d at 894, 298 N.E.2d at 74, the action of the Supreme Court in dismissing the appeal may be regarded as ambivalent. See Note, 84 Yale L.J., op. cit. supra, at 1510-1511.
The most recent instance of avoidance of the issue by the Supreme Court is Pearson v. W.P. Dodd, 429 U.S. 396, 97 S.Ct. 581, 50 L.Ed.2d 574 (1977). The court there had before it a two-stage procedure for liquidation of a tax lien under the West Virginia laws. In the first stage the tax delinquent interest is transferable by sale to the state by a notice procedure involving only public posting and publication. Redemption can be had within 18 months of the sale. In the second stage the state files an action authorizing sale to a third person and obtains an order therefor. Notice of such action is only by publication. Under state law, absolute title vests in the state 18 months after the first sale, subject only to a discretionary power in the court to permit redemption on petition therefor prior to confirmation of the second sale. Pearson v. Dodd, 221 S.E.2d 171, 183 (Sup. Ct. App. W. Va. 1975). This second possibility of redemption is considered "a matter of pure legislative prerogative", or "grace", ibid., and was held by the West Virginia court not the foundation for a right of attack upon the notice provisions preceding the second sale on due-process grounds. The United States Supreme Court, after first noting probable jurisdiction, 426 U.S. 946, 96 S.Ct. 3164, 49 L.Ed.2d 1182 (1976), dismissed the appeal after oral argument "for want of a properly presented federal question". 429 U.S. 396, 97 S.Ct. 581, 50 L.Ed.2d 574. It held that since the appellant was not questioning the validity of the first sale but only the second, and since the state had obtained "absolute title" 18 months after the first sale, appellant had no "constitutionally protected property interest" upon which she might challenge the notice provisions attendant upon the second sale. Ibid.
On the foregoing showing of the facts and the law, I am not convinced that our in rem statute should now be held *31 lacking in due process, contrary to the express holding of validity arrived at by this court in City of Newark v. Yeskel, supra. I begin with the ever-present presumption of the constitutionality of legislation, here fortified by a thoroughly considered prior determination by the court. I consider the conclusion reached in Yeskel a sound one, although not necessarily for all the reasons advanced by the court. I am persuaded of the reasonableness and fairness of the statute in respect of notice after balancing the urgent need of municipalities for an inexpensive and expeditious means of liquidating tax liens and the practical remoteness of prejudice to property owners.
At no time since the great Depression have the fiscal necessities of government at all levels, and consequently the need for dependability of tax collections, been greater than at present. On the other hand, our laws give every fair consideration to realty taxpayers in difficulty. A tax sale is not held until after July 1 of the year following the year of a delinquency. N.J.S.A. 54:5-19. Copies of notices of sale are posted in five "most public places" and published once a week for four weeks preceding sale. N.J.S.A. 54:5-26. Notice of the sale is to be mailed to the owner at his address shown in the list, but not mandatorily. N.J.S.A. 54:5-27. Adjournments of sale can be had in the discretion of the collector but not for more than eight weeks, after which new publication and posting of sale must be had. N.J.S.A. 54:5-28. The municipality may by resolution allow the owner to pay delinquencies in monthly installments over a five-year period. N.J.S.A. 54:5-19. As noted above, where in rem foreclosure of the right of redemption by court proceedings is undertaken, they may not be begun unless each quarterly tax bill for all of the sixteen quarters preceding institution of the action remains unpaid either in whole or in part.[5] Thus, final action to forfeit the property is withheld *32 for at least four years of continued delinquencies by the owner, and even then there may be redemption before entry of final judgment. While the statute does not command the mailing of notice to anyone in interest, it permits such mailing to any owner or lienor who previously requests it, N.J.S.A. 54:5-104.48, and the rules of court also contain such a non-mandatory direction for mailing to each person whose name appears in the tax foreclosure list at his last known address. R. 4:64-7(c).
Having in mind what I regard as the universally known proposition that real estate taxes must be paid at the certain peril of eventual forfeiture of the property for delinquency therein, the latitude allowed owners under our statutes before properties can be foreclosed for delinquencies, the public need for free flow of tax revenues and the practical necessities underlying title insurance and the marketability of real estate, I regard the notice provisions of our in rem tax foreclosure statute as comporting with due process.
Even in relation to the vesting of ordinary in personam jurisdiction due process is not more exacting than procedures which do not offend "traditional notions of fair play and substantial justice". International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In the instant tax-default context traditional notions of fair play and substantial justice should, I think, take into consideration a realty owner's duty to his fellow citizens to keep his property tax-current as well as the State's obligation of fair and just treatment of its taxpayers.
The considerations stated above suffice to render this category of proceeding sui generis and reasonably beyond the scope of the stricter notification requirements of due process held generally applicable by the United States Supreme Court.
In my view, the decision by the Court herein is, in principle, irreconcilable with the legislative objective of securing for municipalities the benefits of inexpensive tax foreclosures and ready marketability of titles emanating from *33 such foreclosures. In terms of due process, when properly applicable, notice strictly should be given the holders of all significant interests in the real property, not just the last owner, as was recently held by the Michigan Supreme Court in Dow v. State, supra. Application of such a rule, however, would render unavailable the benefits mentioned. But if, because of the considerations discussed above, and as I believe to be the case, tax foreclosures by municipalities are in a sui generis category wherein notice of tax foreclosure of tax delinquent property is reasonably imputable to all such holders of interests therein, the proceedings should be exempt from the mandatory necessity of affording actual notice to holders of any interest in the property, whether a fee interest or less. What the Court is really doing here is imposing a policy judgment on the Legislature, not rendering a doctrinally viable holding as to constitutional law. While I might agree with that policy, qua policy, I would not impose it in the guise of due process.

II
Although the alleged notice deficiencies discussed in I hereinabove were the only grounds on which certification was sought in this case, the grant of certification brings up all the grounds of appeal advanced in the Appellate Division, this court not having otherwise ordered. R. 2:12-11. As to the other grounds of appeal and the adverse disposition thereof set forth in the opinion of the Appellate Division, I would affirm for the reasons there stated, which follow.
The procedural defects alleged are:
1) the complaint failed to set forth "the book and page or date and instrument number of the instrument by which" the taxpayer acquired title as mandated by R. 4:64-7(a); and
2) the notice of foreclosure failed to include the words "and serving" as mandated by R. 4:64-7(b) which requires the notice of publication to notify landowners that they may defend by "filing and serving an answer to the complaint * * * within 45 days after the date of publication of the notice."
Defendant concedes no prejudice resulted from these asserted departures from prescribed procedure but argues that strict compliance *34 with the requirements of both the statute and the applicable rule is essential to confer jurisdiction on the court.
As to the first alleged defect, it is clear from an examination of the statute, N.J.S.A. 54:5-104.29 et seq., and a consideration of the case of Teaneck Tp. v. Block 427, Lots 9-10, 19 N.J. 386 (1955), that the purpose of filing the complaint is not to provide notice to the property owners of the pending action, which is accompanied by publication of the foreclosure list, but simply to invoke the doctrine of lis pendens against subsequent grantees. Id. at 396. N.J.S.A. 54:5-104.44.
With respect to the omission of the words "and serving" from the notice of foreclosure, we note that defendant did not file an answer.
Bearing in mind the legislative directive to give the act a liberal construction as remedial legislation to encourage the barring of the right of redemption, N.J.S.A. 54:5-104.31 (see also Teaneck Tp. v. Block 427, Lots 9-10, supra at 397-398), we conclude that the two deficiencies noted do not affect the essential requirement for jurisdiction of the courts over the subject matter. That basic requirement is the manner in which the notice of the proceedings is given. Borough of Paramus v. Ridgewood Park Estates, 42 N.J. Super. 369, 374 (App. Div. 1956); Lakewood Tp. v. Block 251, Parcel 34, 48 N.J. Super. 581, 587 (App. Div. 1958); Norwood v. Block 34, Lot 373, 70 N.J. Super. 130 (Ch. Div. 1961); cf. Preparatory Temple, etc. v. Seery, 81 N.J. Super. 429 (Ch. Div. 1963).
Justice MOUNTAIN and Justice CLIFFORD join in this opinion.
For reversal  Chief Justice HUGHES and Justices SULLIVAN, PASHMAN and SCHREIBER  4.
For affirmance  Justices MOUNTAIN and CLIFFORD and Judge CONFORD  3.
NOTES
[1] N.J.S.A. 54:5-104.42 provides that a copy of the complaint filed in the office of the county recording office, together with publication and posting of notice, "shall be notice to the world including all persons claiming any right, title, interest in or lien upon the land sought to be affected by said complaint, whether or not the names of said persons appear in said complaint...." N.J.S.A. 54:5-104.48 provides for notice to owners who request in writing within the previous five year period that they wish to receive notice of foreclosure. However, it also states that failure to send such notice does not invalidate any action brought pursuant to the Act. Under the Court Rules, which also govern these procedures, mailing notice to each person whose name appears as an owner in the tax foreclosure list is premissive. R. 4:64-7(c).

While our decision today is limited to the constitutionality of the in rem foreclosure procedures, we note that under the statutory scheme it is possible for a taxpayer not even to receive notice that his property was the subject of the tax sale which precedes foreclosure. N.J.S.A. 54:5-27 does provide for notification of known owners when the property is to be sold and a tax certificate issued, but adds that "[f]ailure to mail the notice shall not invalidate any proceedings hereunder."
[2] Specifically, the taxpayer alleged that the complaint filed against its property was defective. It argued that the municipality failed to comply with R. 4:64-7(a), which requires the complaint to set forth the "book and page or date and instrument number of the instrument by which the [landowner] acquired title." Additionally, it argued that the complaint had failed to include certain words required under R. 4:64-7(b). Since we hold that the notice procedures mandated by the statute are unconstitutional, we need not consider these alleged irregularities.
[3] That provision states:

Natural and unalienable rights
1. All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.
[4] The question arises only in the context of whether or not the tax sale which precedes the foreclosure terminates the property interest. The United States Supreme Court has clearly indicated that this type of question can only be answered by reference to state law.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
[Bd. of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.]
[5] These cases are distinguishable from those construing state procedures which do not utilize the foreclosure procedure to extinguish a landowner's property interest. For instance, in Paschall v. Christie-Stewart, Inc., 414 U.S. 100, 94 S.Ct. 313, 38 L.Ed.2d 298 (1973), vacating and remanding 502 P.2d 1265 (Okl. Sup. Ct. 1972), reh. den. 414 U.S. 1138, 94 S.Ct. 884, 38 L.Ed.2d 763 (1974), the Court considered an Oklahoma statute, under which the certificate deed (which is analogous to our tax sale proceeding) conveyed absolute title to the property if notice had been given prior to the issuance of the certificate. See Walker v. Hoffman, 405 P.2d 57 (Okl. Sup. Ct. 1965). The Court, in vacating the judgment of the Oklahoma Supreme Court and remanding the case, stated that there may have been an independent ground supporting the judgment of the state court. Significantly, the Oklahoma Supreme Court has indicated that the Due Process Clause does apply at the point when the landowner's property interest is terminated, upon issuance of the certificate deed. Id., 502 P.2d at 1268.

Similarly, in Pearson v. W.P. Dodd, 429 U.S. 396, 97 S.Ct. 581, 50 L.Ed.2d 574 (1977), the Court was called upon to review another state statute under which the property interest was completely terminated without foreclosure. The Court noted that plaintiff was not challenging the notice required to transfer the interest to the State, but only the procedures by which the State subsequently sold her property to a third person. 429 U.S. 396 at 396-398, 97 S.Ct. at 581-582, 50 L.Ed.2d at 576-577.
[6] See Note, supra, 84 Yale L.J. at 1506 et seq.; Note, "Requirements of Notice in In Rem Proceedings," 70 Harv. L. Rev. 1263-64 (1957); Note, "Due Process in Tax Sales in New York: The Insufficiency of Notice by Publication," 25 Syr. L. Rev. 769 (1974).
[7] In Marchetti v. United States, supra, and the companion case of Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), the Court held that federal wagering tax statutes unconstitutionally infringed upon a taxpayer's Fifth Amendment privilege against self-incrimination. In Efrain T. Suarez, 58 T.C. 792 (1972), subsequent proceedings 61 T.C. 841 (1974), the Tax Court also rejected the notion that tax considerations outweighed constitutional protections. Applying Fourth Amendment guarantees to federal tax jeopardy assessment procedures, the court concluded

that any competing consideration based upon the need for effective enforcement of civil tax liabilities .. . must give way to the higher goal of protection of the individual and the necessity for preserving confidence in, rather than contempt for, the processes of Government.
[58 T.C. at 805.]
[8] Surely, the importance of the individual's property interest, even when measured against the Government's need to collect taxes, is reflected in Pitt's famous denunciation of the English "Cyder Tax":

The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail  its roof may shake  the wind may blow through it  the storm may enter, the rain may enter  all his force dares not cross the threshold of the ruined tenement!
[15 Hansard, Parliamentary History of England (1753-1765), cited in Frank v. Maryland, 359 U.S. 360, 378, 79 S.Ct. 804, 815, 3 L.Ed.2d 877, 889 (1959).]
[9] Although not constitutionally impelled in this regard, we concur that registered or certified mail, return receipt requested, should be utilized to notify a landowner of the foreclosure proceeding. If the letter is refused, or simply not accepted, notice by ordinary mail should be sent to that address and to the clerk of the court. This result comports with various Court Rules which concurrently deal with notice requirements. R. 1:5-2; 4:4-4(a); 4:4-5.

Since the present rule governing foreclosures, R. 4:64-7 fails to make notice by mail mandatory in foreclosure proceedings, we are submitting this matter to the New Jersey Supreme Court Committee on Civil Practice to revise the rule in accordance with this opinion and submit its proposal to us for formal adoption.
[1] For example, that a proceeding to enforce a lien against land, being in rem and not against the owner in personam, thereby somehow does not affect his property interests so as to call for the same kind of notice. Compare 5 N.J. at 323-325 with Mullane v. Central Hanover B. & T. Co., supra (339 U.S. at 311-313, 70 S.Ct. 652) and Note, "Requirements of Notice in In Rem Proceedings", 70 Harv. L. Rev. 1257, 1263-1264 (1957).
[2] A fuller exposition by the same authority, an expert in municipal tax lien law, of how title problems could threaten the marketability of a title derived through a conventional bill to foreclose is set forth in Albano, "Due Process And Its Application To Tax Lien Foreclosures", 5 Rutgers L. Rev. 474, 481-482 (1951).
[3] If one responded to the stated objection that the section 14 additional requirement of filing in court of proof of the mailing of the notice constituted an assurance against loss or destruction of the proof, the response might be that an affidavit of non-demand by any parties in interest other than those to whom notice was mailed might be regarded as unsatisfactory proof of such non-demand by a title insurer.
[4] The figure "48" was changed to "21" by amendment in L. 1974, c. 91, sec. 5.
[5] But see note 4, supra.