DOUGHERTY, J.T.C.
concurring.
I am compelled to concur with the result in this matter as it appears to be mandated by the Appellate Division’s recent decision in the consolidated Muscarelle matters discussed by Judge Pizzuto in his opinion for the court. I write this concurrence because I believe that the result is an unconstitutional denial of procedural due process. The pivotal issue in this case is whether the dismissal of taxpayer’s complaint for failure to pay taxes will, when examined in light of the ex parte remedies set out in the Tax Sale Law (N.J.S.A 54:5-1 to -129), result in a denial of its due process rights. In Schroeder Oil Co. v. Iowa State Department of Revenue and Finance, 458 N.W.2d 602 (Iowa 1990), the Iowa Supreme Court decided this issue. There the Court held:
We reject Schroeder’s due process challenge to Iowa’s tax revenue scheme insofar as the challenge addressed to the absence of a hearing prior to deprivation. That absence is more than justified on the basis of practical necessity. A predeprivation hearing requirement would result in mass chaos, would paralyze the collection of tax revenue, and is not required under the authorities cited.
III. We do however find merit in Schroeder’s due process challenge to the statute as applied to it because of the failure to allow a postdeprivation hearing. Under the procedure invoked, Schroeder, because of its financial plight, cannot contest the assessment at any stage. As noted above, we think the collection of taxes cannot be suspended to provide a hearing for each reluctant taxpayer. But, *464 once government has proceeded with the assessment and has taken whatever appropriate steps it chooses for collection of the tax, due process entitles the protesting taxpayer to request and obtain a hearing. See T.M. Cobb Co. v. County of Los Angeles, 16 Cal.3d 606, 547 P.2d 431, 128 Cal.Rptr. 655 (1976) (assessee not denied due process if postdeprivation hearing is available). Such a right cannot be confined to affluent taxpayers or to those who can raise bonds in the amount in dispute. Postdeprivation bonds ordinarily should not exceed the estimated costs in the contested case.
[Id at 604.]
N.J.S.A 54:3-27 cannot be read in a vacuum. When a taxpayer fails to pay taxes as assessed within the time required by N.J.S.A 54:4-66, the Tax Sale Law requires that the municipality realize the taxes by selling its tax hen. That hen attaches by operation of law, retroactively on the first day of January of each tax year. Our law in New Jersey (See New York, Susquehanna and W.R.R. Co. v. Vermeulen, 44 N.J. 491, 210 A. 2d 214 (1965) (“Susquehanna ”)) would permit the “taking” by sale of a tax certificate with no opportunity for prior judicial review as to the validity of the underlying assessment if (and only if) a post-deprivation opportunity were provided. The Susquehanna analysis is in accord with the due process principles described in McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (“McKesson ”) and its progeny. See Henry Harper v. Virginia Department of Taxation, — U.S. -, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993):
Under the Due Process Clause, U.S. Const., Arndt. 14, s. 1, “a State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination.” If Virginia “offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation healing,” the “availability of a predeprivation hearing constitutes a procedural safeguard ... sufficient by itself to satisfy the Due Process Clause.” On the other hand, if no such predeprivation remedy exists, the “Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.” In providing such relief, a State may either award full refunds to those burdened by an unlawful tax or issue some other order that “ereatets] in hindsight a nondiseriminatory scheme.”
[Id. at---, 113 S.Ct. at 2519-20, 125 L.Ed.2d at 88-89. (Citations omitted)]
It is consistent with Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It includes the same analysis applied by the Iowa Supreme Court. It answers, however, only part of *465 the issue in this case — that is, whether post-deprivation relief satisfies the requirements of due process.
No constitutionally “meaningful” opportunity for post-deprivation review is provided in our Tax Sale Law. For this reason, I conclude that judicial review must be permitted prior to the mandatory sale of a tax certificate. This conclusion, I respectfully submit, is consistent with both the clear language of N.J.S.A 54:3-27, and the manifest purpose of the Legislature in enacting the law as it presently exists. N.J.S.A 54:3-27 provides in pertinent part:
The payment of part or all of the taxes upon any property, due for the year for which an appeal from an assessment upon such property has been or shall hereafter be taken, or of taxes for subsequent years, shall in nowise prejudice the status of the appeal or the rights of the appellant to prosecute such appeal, before the county board of taxation, tax court, or in any court to which the judgment arising out of such appeal shall be taken, except as may be provided for in R.S. 51:2-89.
[N.J.SA 54:3-27 (emphasis added).]
Senate Revenue, Finance and Appropriations Committee Statement to Assembly Bill, No. 2147, (July 11, 1977) amending N.J.S.A 54:3-27, reflects the intent to require full payment of taxes for any year under review:
The purpose of this bill is to require the payment of the first three quarters of property tax by a taxpayer who files an appeal with the county board of taxation, to require full payment of the current year property taxes upon appeal to the Division of Tax Appeals and to provide for the payment of interest at a rate of 5% instead of 8% per annum on any refund of excess taxes paid as indicated in the final judgment____
This bill represents a turnaround in State policy regarding payment of property taxes where an appeal is pending. The presumption in law, prior to P.L.1975, c. 361, was that an appellant was responsible for paying only that amount of tax which he felt was reasonable as reflected in his appeal. With P.L.1975, c. 361, a requirement that 90% of current taxes be paid was put in law. This gave rise to the disparity of amount of taxes due related to the point in time that the appeal is filed. The presumption in law in this bill is that a taxpayer is responsible for the taxes assessed against him and the filing of an appeal in 'no way reduces or forgives that liability.
[Senate Revenue, Finance and Appropriations Comm. Statement to Assembly Bill No. 2147, (July 11, 1977). (emphasis added).]
N.J.S.A 54:3-27 clearly fixes a taxpayer’s obligation and liability to pay the amount of tax as assessed, notwithstanding the pendency of its appeal of the assessment. The municipality’s sale *466 of its lien for a delinquent taxpayer’s taxes to third parties and the subsequent right to foreclose the lien, required a liquidated sum— that is, a fixed and determinable amount. Without this fixing of liability what would the municipality sell and what would the certificate holder later foreclose? In this respect N.J.S.A 54:3-27, in conjunction with applicable provisions of the Tax Sale Law, serve the same function as an acceleration clause in a standard form mortgage. Together they set the stage for the collection remedies.
I am troubled by the Appellate Division’s conclusion that the Legislature intended N.J.S.A 54:3-27’s “... shall pay ... no less than the total of all taxes and municipal charges ...” to mean something that it could have clearly said but did not — ie. that failure to pay requires dismissal — on the strength of dicta in Lecross Assoc. v. City Partners, 168 N.J.Super. 96, 401 A.2d 1099 (App.Div.), certif. denied, 81 N.J. 294, 405 A.2d 837 (1979). “The narrow question before [the Appellate Division in Lecross Assoc. was] ... whether the judgment of the Bergen County Board of Taxation [was] void for lack of jurisdiction because of plaintiffs failure to pay the borough’s tax collector 90% of the taxes originally assessed against it, as [then] required by N.J.S.A 54:3-27.” Lecross Assoc., supra., 168 N.J.Super. 96, 97, 401 A.2d 1099. The narrow holding of Lecross Assoc., that “... [n]owhere do we discern a purpose to condition the power of the reviewing body to adjudicate upon the making of payment by the taxpayer ... ”, Id. at 99, 401 A.2d 1099, does not resolve the issue raised in the within matter.
N.J.S.A 54:3-21, which applies to “April 1st appeals” (that is to direct appeals to the Tax Court as well as to appeals to the county boards of taxation), directs that “all appeals to the tax court hereunder shall be in accordance with the provisions of the State Tax Uniform Procedure Law----” N.J.S.A 54:51A-1, which forms a part of the Procedure Law and was formerly designated N.J.S.A 54:2-39, deals with only three situations where “there shall be no review”. A failure to pay taxes is not one of those situations.
*467 The post-deprivation hearing afforded a taxpayer who “purchases” that right by affirmatively paying the municipality’s assessment is not sufficient to satisfy due process requirements vis a vis the taking of the delinquent taxpayer’s property under the provisions of the Tax Sale Law. It cannot be overlooked that the Tax Sale Law provides no refund remedy for the delinquent taxpayer. Under McKesson, (and, it would appear, under the Appellate Division’s decision in the consolidated Muscarelle matters — “[t]he United States Supreme Court has ... ruled that a state may satisfy due process by requiring payment prior to a hearing so long as a refund or other monetary remedy process is afforded.” Muscarelle, supra, 284 N.J.Super. at-(App.Div. 1994)) this deficiency would render the statute unconstitutional. The power of government to take under the Tax Sale Law can only be sanctioned by the Constitution if the taxpayer is provided access to the court either before or after the taking. While protection of the municipal fisc might be a sufficient interest to support the provision of only post-deprivation review, that interest cannot support the complete denial of review[1] which occurs under the present reading of the statute. While my colleagues- on the Tax Court express concern that taxpayers might attempt to gain an advantage in their litigation by withholding (or threatening to withhold) quarterly tax payments until resolution of their assessment appeals, the record is devoid of any evidence to support this fear. In addition, I have not discovered a single reported, case where this issue has been raised.
A tax delinquency attracts interest at a rate as high as eighteen percent per annum and potential penalties at six percent per annum once the delinquency exceeds $10,000. As well, a tax delinquency has a negative impact on taxpayer’s credit status and will almost universally constitute an event of default under any mortgage as may be .outstanding on the taxpayer’s property. The failure to pay real property taxes on time not only seriously *468 impedes a taxpayer’s ability to borrow in the commercial markets but also places the defaulting taxpayer at risk of acceleration of its entire mortgage debt and foreclosure by its mortgagee. Adding to these factors, the superiority accorded the municipality’s lien for unpaid taxes can make it impossible for the taxpayer to extract itself from the whirlpool created by the initial delinquency. While the taxpayer who is willing to walk away from its property might make the municipality its lender under these circumstances, it is as reasonable to assume that the “borrower” will be an individual who, as a result of the loss of a job, the death of a spouse or the sudden vacancy of its leased property, simply cannot pay.
Due process must safeguard against the government’s taking more than its due as might well occur if, as the taxpayer here asserted in its complaint, the assessment is discriminatory. See Carpenter v. Shaw, 280 U.S. 363, 369, 50 S.Ct. 121, 123, 74 L.Ed. 478 (1930) (“a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment.”). If the taxpayer in this matter pays the delinquent taxes to avoid a sale of a certificate,- or, a certificate having been sold, exercises its equity of redemption and thereby saves title, do we not, without the benefit of judicial review, leave unanswered the issue of discrimination in assessment? Assuming that the subject property is assessed at a discriminatory amount, has not the municipality a duty to refund the amount wrongfully taken? Can it be doubted that a taking occurs as much by a wrongful intrusion upon the equity of redemption (i.e. as occurs where the taxpayer must overpay to redeem title) as by the initial overpayment of taxes made on a timely basis to avoid dismissal?
Susquehanna Mandates Review
N.Y. Susquehanna & W.R.R. v. Vermeulen, supra, is the seminal New Jersey case for the “pay now, litigate later” principle. The Court in Susquehanna considered the remedies provided with respect to delinquencies in payment of taxes assessed under the Railroad Tax Law of 1948, N.J.SA 54:29A-1 to -129. During the pendency of an administrative appeal of the assessment of certain *469 real property owned by Susquehanna, the State Comptroller issued to the Clerk of the Superior Court a certificate for the amount of the taxpayer’s delinquent taxes. The Clerk entered the amount so certified among docketed judgments and the taxpayer appealed that action.
The statute in Susquehanna provided:
As an additional or alternative remedy, the State Comptroller may issue a certificate to the Clerk of the Superior Court that a taxpayer is indebted under this or any former act for the taxation of railroads in such amount as shall be named in such certificate, and thereupon the clerk to whom such certificate shall have been issued shall immediately enter upon his record of docketed judgments the name of such taxpayer, and of the State, the amount of the debt so certified, a short name of the tax, and the date of making such entries. The making of the entries shall have the same force and effect as the entry of a docketed judgment in the office of such clerk, and the State Comptroller shall have all of the remedies and may take all of the proceedings for the collection thereof which may be had or taken upon the recovery of a judgment in a civil action, but without prejudice to the taxpayer’s right of appeal
[N.J.S.A 54:29A-57, quoted in Susquehanna, supra, 44 N.J. at 494, 210 A.2d 214 (emphasis added).]
The Susquehanna taxpayer asserted that the “ex parte issuance of the certificate by the State Comptroller and the ex parte entry made among docketed judgments ...” denied it due process of law. Susquehanna, supra, 44 N.J. at 500-01, 210 A.2d 214. Our Supreme Court held that such remedy did not result in a denial of due process because the taxpayer could thereafter continue to pursue its administrative and judicial remedies; that is, the taxpayer was afforded “post-deprivation” review. The Court reasoned:
The grievance claimed is the failure to provide for notice and hearing before judgment. But N.J.S.A 54:29A-57 expressly provides that the entry of the tax indebtedness [ie. as a result of taxpayer's failure to pay ] among docketed judgments shall be “without prejudice to the taxpayer’s right of appeal’. Thus the taxpayer may continue to pursue its administrative and judicial remedies under N.J.S.A 54:29A-31 and 36. There being that opportunity for hearing, the mere entry of a ‘judgment’ does not deny due process of law. ‘Due process requires that there be an opportunity to present every available defense; but it need not be before the entry of judgment’ American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932).
Of course the entry of judgment is designed to effect collections and to remit the taxpayer, if successful to a refund by way of a credit upon later taxes assessed as provided in N.J.S.A 54:29A-49, unless the taxpayer obtains a stay [ie. of the *470 enforcement remedies] upon paying the amount determined by the Superior Court not to be in substantial controversy pursuant to N.J.S.A. 54:29A-38. Still, [ie. in the event of the grant of such stay] due process does not forbid compulsion to pay taxes now [ie. by virtue of a cash payment by taxpayer to obtain the stay, or the statutory ex parte collection remedy] and litigate later. Referring to a federal statute which barred a suit to restrain assessment or collection of any tax, the United States Supreme Court said in Taylor v. Secor (State Railroad Tax Cases), 92 U.S. 575, 23 L.Ed. 663, 673 (1875):
“... It is a wise policy. It is founded in the simple philosophy derived from experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment: and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to our courts of justice.”
[Id. at 501, 210 A2d 214 (emphasis added).]
It is precisely because of the ex parte nature of the Tax Sale Law’s remedies and the lack of any provisions in the Law for a hearing that dismissal of delinquent taxpayer’s complaint results in a denial of due process.[2] I cannot read Susquehanna to permit any other result. The “pay” in the “pay now, litigate later” principle discussed in that case was the payment accomplished by the collection remedy. Susquehanna wasn’t concerned with the taxpayer’s failure to pay the tax as assessed; it didn’t hold that such failure could result in dismissal. Susquehanna is a remedies case — it resolves only part of our issue when it says that providing only post deprivation review satisfies due process. Susquehanna was concerned with whether the State could “take” before a court determined the validity of the very tax taken. Susquehanna permitted the taking in advance of review because a refund remedy was provided by law. Because the Tax Sale Law contains no such remedy, the issue simply and practically becomes “if not now, when?”
*471 Procedural Due Process Analysis
In McKesson, supra, 496 U.S. at 36, 110 S.Ct. at 2250, 110 L.Ed.2d at 35-36, the Court reiterated the applicability of due process safeguards to procedures for the assessment and collection of a tax as follows: “(b)ecause exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause * * (footnote omitted) (emphasis added). Exaction occurs not only when payment of tax is made by the taxpayer under protest, that is where taxpayer pays and proceeds to appeal, but also where a delinquent tax is collected by ex parte remedies such as the sale of a tax certificate.[3] McKesson does not resolve our issue because that case involved the quality of the refund remedy provided by the State of Florida, not its very availability. McKesson would clearly have held that the lack of any refund remedy (i.e. the opportunity for post-deprivation review) constitutes a denial of procedural due process. See also Bob Jones University v. Simon, 416 U.S. 725, 746, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496, 514 (1974) (“[t]his is not a case where an aggrieved party has no access at all to judicial review. Were that true, our conclusion might well be different.”); Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 595-97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931) (“where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained.... Where only property rights are involved, mere postponement of judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate.”) (citations omitted).
Taxpayer’s issue, primarily one of procedural due process, is resolved by applying the three factor balancing test fashioned by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335, 96 *472 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). This test requires consideration of the following factors:
... First, the private interest that will be affected by the official action; Second, the risk of an erroneous deprivation of [such] interest through the procedures used, and the probable value, if any; additional or substitute procedural safeguards; and Finally, the Government interest [(ie. the function involved and the fiscal or administrative burdens that additional or substitute requirements would create].
[Mathews v. Eldridge, supra, 424 U.S. at 335, 96 S.Ct. at 903; accord State v. Howard, 110 N.J. 113, 129, 539 A.2d 1203 (1988); see also Blackhawk Mining Co., Inc. v. Andrus, 711 F.2d 753, 757 (6th Cir.1983); Ocean Pines, Ltd. v. Borough of Pt. Pleasant, 112 N.J. 1, 9, 547 A.2d 691 (1988).]
Applying this test to the within matter, I would find the first and third factors as follows:
(1) Private Interest. The taxpayer’s private interest is twofold. First, as in Ocean Pines, supra, it is the tax assessment and the actual tax bills. The dismissal of the within complaint finalizes the assessment and the taxpayer’s 1994 tax liability. If taxpayer were to hereafter pay the delinquencies, it must pay the full amount of tax as billed, together with all accrued interest and penalties thereon, in order to avoid the sale of a tax certificate. If the taxpayer does not pay the delinquencies, a second interest arises, which is the equity of redemption.[4] If taxpayer’s delinquencies continue, the mandatory remedies set out in the Tax Sale Law will be triggered. The first, in time of such remedies is the sale of a tax certificate.[5]
*473 The sale of a certificate has the following effects: (a) the taxpayer’s right to redeem the certificate is conditioned upon payment in full of the asserted liability together with accrued interest and penalties, costs, and (potentially) subsequent municipal liens N.J.S.A. 54:5-58; and (b) if taxpayer should fail to redeem, the certificate purchaser will have the right, within the time periods set out in N.J.S.A. 54:5-86 (which extend for a 20 year period), to acquire fee title to • the subject property by foreclosing the equity of redemption of all outstanding interests, including taxpayer’s.[6]
(3) The Interest of the Municipality. The municipality’s interest in compliance with quarterly tax payments is obvious and substantial. In Township of Montville v. Block 69, Lot 10, 74 N.J. 1, 376 A.2d 909 (1977) the Court refers to real property taxes as the “lifeblood of municipal government ... [and asserts that] their ready collection and an effective and inexpensive means for enforcement of the public lien therefor are peculiarly vital to the public welfare____” Id. at 23, 376 A2d 909. The interest of government in securing the steady flow of tax revenues has traditionally served as justification for providing review of a tax’s validity only post deprivation, as in Susquehanna. However, the *474 weight accorded this interest cannot of course support an intrusion upon taxpayer’s due process rights. See Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); Henry Harper v. Virginia Department of Taxation, supra; Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).[7]
(2) Risk of erroneous deprivation of Taxpayer’s Private Interests. Taxpayer argued here that dismissal of its complaint would violate procedural due process because it would permit the taking of property under the Tax Sale Law without any opportunity for administrative or judicial review. Such taking, it said, being measured by the quantum of unpaid taxes (together with accrued interest and penalties) requires some review of the assessment from which the tax liability is derived, both to insure compliance with due process, and with the mandate of N.J. Const, art. VIII, § 1, H 1(a), which provides:
Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general rate of the taxing district in which the property is situated, for the use of such district.
Citing F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 428, 495 A.2d 1313 (1985), taxpayer asserted that a claim of discrimination in assessment (as set out in its complaint) implicates equal protection rights. I agree.
Three procedures were available to taxpayer for review of the underlying assessment. First: Taxpayer’s initial avenues for *475 review were by (a) appeal to the county board of taxation or (b) direct appeal to this court. N.J.S.A 54:3-21.[8] There is no question that the provisions of N.J.S.A. 54:3-27 have been interpreted to apply with respect to both appeals. The remedy of dismissal fashioned by the courts under N.J.S.A 54:3-27 would have been equally applicable had taxpayer brought its appeal to the county board instead of directly to this court.
Had taxpayer taken its initial appeal to the county board and been subject to dismissal there, it could, pursuant to N.J.S.A 54:51A-1, have then appealed that determination to the Tax Court. However, N.J.S.A. 54:51A-1 has been held to require payment of all taxes due and owing as of the date a complaint is filed with the tax court, as a jurisdictional prerequisite. Powder Mill I, supra; Woodlake Heights Homeowners Ass’n v. Middletown Tp., 7 N.J.Tax 364 (App.Div.1984).
Second: It appears that taxpayer might have an opportunity for review of the validity of the assessment upon the institution of a foreclosure action, where denial of review of the underlying assessment has been held to be an assertable defense. See Township of Montville, supra; The Town of West Orange v. Block 107, 162 N.J.Super. 314, 316, 392 A.2d 1213 (App.Div.1978); R. 4:64-7(a).
Third: And finally, as the municipality argued, taxpayer might have the opportunity to pursue its appeal if a tax certificate for tax year 1994 had been sold prior to the return date of this motion. Echelon Glen, supra. In this regard it is noted that a certificate sale could not occur until after April 1, 1995.
The Supreme Court in McKesson, supra, determined the State of Florida’s constitutional duty to provide relief for a taxpayer’s payment of an unlawful tax. There the Court said:
*476 The State may choose to provide a form of “predeprivation process”, for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding initiated by the State.9 However, whereas “[w]e have described the ‘root requirement’ of the Due Process Clause as being ‘that an individual be given an opportunity for a hearing before he is deprived of any significant property interest’ ”, Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct 1487, 1493 [84 L.Ed.2d 494] (1985), it is well established that a State need not provide a predeprivation process for exaction of taxes. Allowing taxpayers to litigate them tax liabilities prior to payment might threaten a government’s financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult. To protect government's exceedingly strong interest in financial stability in this context, we have king held that a State may employ various financial sanctions and summary remedies such as distress sales in order to encourage taxpayers to make timely payments prior to resolution of any dispute over the validity of the tax assessment
[McKesson, supra, 496 U.S. at 36-37, 110 S.Ct. at 2250-2251, 110 L.Ed.2d at 36 (emphasis added)]
The statutory scheme in McKesson, supra, like that under consideration in this case, did not provide for a “predeprivation” determination of the tax assessment’s validity. The McKesson taxpayer was, as our taxpayer is, required to “pay” the tax as assessed, whether by actual payment under protest, or by virtue of being subject to ex parte summary collection remedies.[9]
[10] In McKesson, however, as in Susquehanna, the statutory scheme provided in either event for judicial review by means of a “post deprivation” refund action. The McKesson Court went on to examine the meaningfulness of the “post deprivation” remedy provided by the State of Florida and said “(t)o satisfy the requirements of the Due Process Clause, therefore, in this refund action the State must provide the taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, (footnote omitted) but also a “clear and certain remedy”, [Atchison v.] O’Connor, 223 U.S., [280] at 285, 32 S.Ct. *477 [216] at 217 [56 L.Ed. 436 (1912) ], for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one.” McKesson, supra, 496 U.S. at 39, 110 S.Ct. at 2251,110 L.Ed.2d at 37 (emphasis added). That the denial of any opportunity for judicial review in McKesson would have violated the requirements of procedural due process cannot be doubted.[11] See Charles J. Reich v. Marcus E. Collins, Revenue Commissioner of Georgia, et al., — U.S.-, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994). Nor can it be doubted that the same requirements apply whether the tax is paid under protest or extracted by an ex parte procedure.[12]
. Each of the Second and Third procedures for review of taxpayer’s 1994 assessments clearly fail to meet due process requirements. Mathews v. Eldridge, supra, 424 U.S. at 333, 96 S.Ct. at 902, 47 L.Ed.2d at 32 (“The fundamental requirement of due process is the opportunity to be heard ‘at a meaningful time and in a meaningful manner.’ ”). Due process cannot turn on happenstance and conjecture.
The marginal viability of a hearing as part of the tax certificate foreclosure action is clear in light of the following provisions of the Tax Sale Law:
The certificate of sale shall be presumptive evidence in all courts in all proceedings by and against the purchaser, his representatives, heirs, and assigns, of the truth of the statements therein, of the title of the purchaser to the land therein described, and the regularity and validity of all proceedings had in reference to the sale. After two years from the record of the certificate of sale, no evidence shall be admitted in any court to rebut the presumption, unless the holder thereof shall have procured it by fraud, or had previous knowledge that it was fraudulently made or procured.
[N.J.S.A 54:5-52.]
If the assessment itself is valid and the tax, assessment or other municipal charge, or any part thereof, is justly due, no sale shall be set aside, except on the condition *478 that the amount due shall be paid to the municipality for the use of the holder of the certificate of sale by the person applying to set it aside____
[N.J.S.A. 54:5-43.]
See also South Carolina v. Regan, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). Beyond these procedural impediments is the 20 year limitations period on the foreclosure action. Can taxpayer’s due process entitlements be satisfied by a foreclosure hearing occurring 5, 10 or 15 years after the tax year in issue? I think not.
The meaninglessness of the right the taxpayer herein might have had under Echelon Glen, supra, to proceed had a tax certificate for the 1994 delinquency been sold prior to the return date of this motion (October 20, 1994) is obvious when one considers that a certificate could not under the law be sold until sometime after April 1, 1995. Additionally, it is unclear what effect, if any, the recent amendment to N.J.S.A. 54:4-67 will have upon the future application of the holding in Echelon Glen, supra. L. 1994, c. 32, § 4 (May 12, Í994), added the following paragraph to N.J.S.A. 54:4-67:
“Delinquency” means the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years. The property shall remain delinquent, as defined herein, until such time as all unpaid taxes, including subsequent taxes and liens, together with interest therein shall have been fully paid and satisfied. The delinquency shall remain notwithstanding the issuance of a certificate of sale pursuant to R.S. 54:5-32 and R.S. 54:5 — 16. The governing body may also fix a penalty to be charged to a taxpayer with a delinquency in excess of $10,000 who fails to pay that delinquency prior to the end of the fiscal year. If such taxes are fully paid and satisfied by the holder of an outstanding tax sale certificate, the holder shall be entitled to receive the amount of the penalty as part of the amount required to redeem such certificate of sale. The penalty so fixed shall not exceed 6% of the amount of the delinquency.
As to the First procedure, I would hold that dismissal of taxpayer’s complaints, where no further opportunity for review is provided under the Tax Sale Law, would deny taxpayer due process. The complete preclusion of review serves primarily to relieve the municipality of defending the validity of its assessment and adds little to the collection of the delinquent taxes. Without an opportunity for review, the risk to taxpayer of an erroneous deprivation of its private interests is compelling. This risk is more particularly compelling because the Tax Sale Law’s collection remedies are *479 intended to bring third parties into the matter — complete with their own due process rights.

An expedited hearing before the taking affords taxpayer due process “If Not Now, When?”

I do not interpret N.J.S.A. 54:3-27 as precluding a similar expedited review procedure as found in Ocean Pines, supra, and accordingly conclude that, because that review is available, the assessment and collection scheme satisfies due process requirements.
Among the issues on appeal in Ocean Pines, supra, was whether the dismissal of a complaint for failure to respond to the municipality’s request for financial data, under N.J.S.A. 54:4-34, violated taxpayer’s procedural due process rights.[13] In reversing the trial court’s blanket dismissal, the Appellate Division said:
Had the assessor valued plaintiffs property at 10 times its purchase price, there is no question that the assessor could be said to have violated the separately-stated standard of the statute itself, and unreasonably determined the full and fair value of the property. Violations of the statute’s standard of reasonableness must be judicially reviewable. Otherwise, there would be no check upon the assessor’s compliance with the express standard of the statute____ Were the rule otherwise, the statute, contrary to its terms would authorize assessments in violation of the N.J. Const, art. VIII, § 1, par. 1(a) and NJ.S.A. 54:4-23.
[Ocean Pines v. Borough of Pt. Pleasant, 213 N.J.Super. 351, 355, 517 A.2d 472 (App.Div.1986), aff'd, 112 NJ. 1, 547 A2d 691 (1988).]
*480 In affirming the Appellate Division’s conclusion that the statute was not violative of procedural due process the Supreme Court said:
[(A)]ssuming that the taxpayer complies with the request for information, an appeal may be taken to the county board, with further appeals to the Tax Court and the Appellate Division. Even where the taxpayer fails to comply, the statute still provides for a “reasonableness” appeal from the assessor’s valuation of the property---- In light of those protections, the risk of an erroneous deprivation of the taxpayer’s money is minimal....
[Ocean Pines, supra, 112 N.J. at 9-10, 547 A.2d 691.]
Because the Supreme Court agreed with the Appellate Division’s interpretation of N.J.S.A. 54:4-34 as requiring a reasonableness appeal, it did not decide whether the same was constitutionally required.
A municipality must act within the confines of N.J. Const. Art. VIII, § 1, IT 1(a) in making assessments of real property. N.J.S.A 54:4-34’s direction to the assessor to “reasonably” determine the full and fair value does not create that responsibility.[14] I would hold that the same constitutional underpinning as found by the Appellate Division with regard to the N.J.S.A. 54:4-34 “reasonableness appeal”, inheres (and must be recognized) in N.J.S.A. 54:3-27 and mandates that taxpayer be afforded the opportunity to be heard with respect to its claims of discrimination in assessment. See N.J.S.A. 54:4-23. The fundamental requirement of due process, being the opportunity to be heard “at a meaningful time and in a meaningful manner”, Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965), is met where taxpayer is afforded the opportunity to be heard in an expedited procedure akin to that set out in the Ocean Pines matter, and before the taking by the government accomplished under the self executing remedies of the Tax Sale Law.
The opportunity to be heard before the government’s taking satisfies taxpayer’s entitlement to due process, its rights to equali *481 ty and uniformity under N.J. Const. Art. VIII, § 1, If 1(a), and its entitlement under equal protection principles; preserves the efficiency and insures the integrity of the collection remedies set out in the Tax Sale Law; and avoids post sale challenges of the tax certificate purchasers’ interests and rights. This procedure imposes no more of a burden upon the municipality than it already bears under the constraints of the constitutional requirement of equality and uniformity in assessment and is consistent with the spirit of the courts’. decisions in the cases relied upon by the municipality. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 495 A.2d 1313 (1985).[15] While some may fear a strain upon the court in conducting these expedited hearings, I, for one, have not seen a multitude of such dismissal motions.
For the reasons stated above, had I been free to do so, I would have denied the municipality’s motion.

 See Richard M. Lipton, Procedural Due Process in Tax Collection: An Opportunity for a Prompt Postdeprivation Hearing, 44 U.Chi.L.Rev. 594 (1977).

 Although General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 416 A.2d 37 (1980), has been cited in the cases relied upon by the municipality for the "pay now litigate later" principle, no due process arguments were entertained there because the Court found that the statute (N.J.S.A. 54:10A-19.2(b)) did not require the taxpayer to post security as a requirement to perfect its appeal, but merely provided that "a taxpayer's failure to post security for the amount of tax in dispute simply entitles the Director to pursue the collection and enforcement remedy provided____" in the statute. Id. at 130, 416 A.2d 37. See also Ward v. Board of County Com’rs., 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920) (emphasis added).

 The Supreme Court, 1989 Term — Leading Cases, 104 Harv.L.Rev. 40, 188 (1990) (discussing McKesson).

 This second interest, itself independently protected by due process principles, distinguishes this case from the procedural default cases such as late filing, failure to answer interrogatories and failure to prosecute, each of which may result in a dismissal but does not implicate an ex parte collection remedy.

 NJ.S.A. 54:5-19 provides:
When unpaid taxes or any municipal lien, or part thereof, on real property, remains in arrears on April first in the fiscal year following the fiscal year when same became in arrears, or in the case of municipalities that operate on the State fiscal year, on October first in the fiscal year following the fiscal year when the same became in arrears, the collector or other officer charged by law in the municipality with that duty, shall subject to the provisions of the next paragraph, enforce the lien by selling the property in the manner set forth in this article.
(Taxpayer indicates that the April 1st date applies herein.)

 Jefferson Tp. v. Block 447A, Lot 10, 228 N.J.Super. 1, 548 A.2d 521 (App.Div. 1988) as below, sets out the rights acquired by the purchaser of a tax certificate, which include, where the purchaser is the municipality itself, due process guarantees.
[T]he right to receive the sum ... paid for the certificate with interest at the redemption rate for which the property was sold. N.J.S.A. 54:5-58 ... the right to redeem from any other holder a subsequently issued tax sale certificate. Realty Sales Corp. v. Payne, 76 N.J.Super. 59, 61-62 [183 A.2d 772] (Ch.Div.1962), aff'd o.b. 78 N.J.Super. 504 [189 A.2d 458] (App.Div. 1963), certif. denied, 41 N.J. 162 [195 A.2d 305] (1963). [and] [finally, and most important, the ... right to acquire title by foreclosing the equity of redemption of all outstanding interests including the owner’s. N.J.S.A. 54:5-86 et seq. ... [Foreclosure by a municipality under the [In Rem Foreclosure] Act extinguishes all the prior holder's rights, including the right to receive, upon redemption, the amount originally paid by the ... [third party purchaser] for the tax certificate. Consequently, the holder of a tax sale certificate has a property interest protected by the requirements of due process.
[Id. at 4-5, 548 A.2d 521 (citations omitted).]

 See also Senate Revenue, Finance and Appropriations Committee Statement to Assembly Bill, No. 1276 (with respect to the 1975 amendment of NJ.S.A. 54:3-27) where the Committee echoes the innate balancing of due process:
In recommending this bill, the Committee takes cognizance of both the taxpayers' and the tax districts' problem with the properly tax assessment and collection process. On the taxpayer's side, it is reasonable to assume that an assessment may not be fair and payment of the full tax liability would be inequitable, and some degree of relief before the adjudication of an appeal is necessary. From the tax district’s viewpoint, collections are required to meet expenses, and when substantial shortfalls occur, a financial hardship is created, or in anticipation of appeals reserves are high, imposing a greater tax burden on the other taxpayers in the district.

 At oral argument the municipality asserted that the taxpayer might have been heard in the Superior Court, Law Division, where, it was posited, the payment of tax was not a condition to being heard. We were not offered, nor have I found any authority for this proposition. Perhaps it results from the same undifferentiated feeling of "fairness” which appears to be motivating these many taxpayers challenging the court’s interpretation of dismissal for failure to pay.

 See Rosewell v. LaSalle Nat. Bank, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

 Such remedies satisfying the requirements of procedural due process where the taxpayer could 'litigate later”.

 See Bob Jones University v. Simon, 416 U.S. 725, 746, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496, 514 (1974) where taxpayer sought the protection of an injunction, which was denied, as taxpayer had, among its other procedural safeguards, access to United States Tax Court, prior to payment.

 See Ward v. Board of County Com'rs., supra, 253 U.S. at 24, 40 S.Ct. at 422.

 NJ.S.A. 54:4-34 provides, as relevant:
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request ... or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall he heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request....

 The presumption of validity which attaches to the municipality’s assessment of properties for tax purposes assumes that government will act in accordance with its responsibilities under law.

 This procedure is likewise consistent with the intent manifested by the State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 to -7, which applies to all appeals to the Tax Court; and with the purpose of the Tax Sale Law to insure validity of title.